■ ROBERT P. DOZIER, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 70643.)—Levine, J. Appeal from an order of the Court of Claims (Hanifin, J.), entered September 17, 1986, which dismissed the claim.

In March 1980, claimant was convicted of rape in the first degree and sodomy in the first degree based on an incident which occurred in a graduate dormitory at Cornell University where claimant and the complainant both resided in August 1979. Claimant's conviction was based virtually entirely on the testimony of the complainant. According to the trial testimony, both claimant and the complainant had just returned to school for the fall semester and had been casually acquainted for a few days prior to the incident. On the evening in question, the complainant and several friends, including Vicki Meade, went to a disco where the complainant noticed claimant's presence and pointed him out to her friends. Upon returning to the dormitory at approximately 1:00 A.M., the complainant encountered claimant on the floor where she lived and they conversed in the hallway until another resident complained about the noise, which prompted them to enter the complainant's room.

At trial the complainant testified that they continued talking in her room until claimant asked her if she wanted to make love, to which she responded "no", objected to his attempts to touch her hand and hair, and told him she was a lesbian. She testified that, at this point, claimant became angry, threatened her with an umbrella, and then forcibly raped and sodomized her. The complainant testified that out of fear she complied, feigned pleasure, and agreed afterwards to be "his woman" and let him stay the night. When claimant left to get some Scotch from his room, complainant ran to Meade's house, approximately one block away.

According to claimant's version of the incident, although the complainant initially discouraged his advances and informed him that she was gay, she later agreed to the sexual encounter and he expected to return after getting the Scotch and spend the night with her. When he returned and found the complainant's door locked, he assumed she had gone to sleep and made attempts the following day to find her and to retrieve the umbrella he left in her room.

As to subsequent events, the complainant and Meade both testified that she arrived at Meade's house wearing only a bathrobe, told Meade that she had been raped and asked if she could spend the night. Meade refused and the police were called. The police testified that when they arrived, complainant only asked to be taken home and they informed her that they did not provide taxi services. Only after further questioning and prompting did she say that she had been raped.

Claimant received concurrent terms of 6 to 12 years' imprisonment upon his criminal conviction and was incarcerated in Attica Correctional Facility. This court affirmed the conviction, characterizing the conflicting testimony as essentially a question of credibility which the jury could properly resolve against claimant (People v Dozier, 85 AD2d 846). One Justice dissented upon the ground that the complainant had not used reasonable means of resistance available to her and, hence, there was insufficient proof of claimant's guilt (supra, at 846-847).

In 1982, new evidence was discovered which consisted of records and reports by a number of therapists concerning the complainant's psychiatric history, both before and after the incident involving claimant. This evidence demonstrates that complainant suffers from serious psychological disorders involving confusion about her sexual identity, distorted perceptions of her encounters with men, patterned perceptions of herself as a victim, and extreme behavioral reactions to rejection in which there are attempts to avenge or reverse the other person's rejection of her including, inter alia, seduction of a male rival, and voluntary submission to anonymous and essentially self-punishing sexual encounters. Significantly, the therapy notes indicated that complainant and Meade had been homosexually involved in August 1979 and that complainant had perceived rejection by Meade just prior to the incident with claimant. Moreover, the psychiatric record also contains statements of the complainant regarding the incident in which she describes "letting" herself be raped out of anger at a female lover, of "enjoying the rape" and feeling guilt at pressing charges.

In light of this additional evidence, claimant moved to vacate his judgment of conviction pursuant to CPL 440.10 (1) (g). After a hearing, County Court granted claimant's motion and ordered a new trial. Shortly thereafter, the District Attorney moved to dismiss the indictment against claimant on the ground that, based on the newly discovered evidence, it was anticipated that the prosecution would be unable to meet

the burden of proof upon retrial. County Court granted this motion and dismissed the indictment "in the interest of justice" pursuant to CPL 210.40.

Claimant then instituted this action for damages against the State pursuant to Court of Claims Act § 8-b (the Unjust Conviction and Imprisonment Act). After issue had been joined, the Court of Claims dismissed the claim, *sua sponte,* on the ground that claimant's pleadings did not indicate a likelihood of success at trial as required by Court of Claims Act § 8-b (4). This appeal by claimant ensued.

Court of Claims Act § 8-b (4) provides that a claimant, in his pleadings, must "state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial" in proving that he is innocent of the criminal conduct for which he was convicted and imprisoned. Claimant's burden at trial is to prove his innocence by clear and convincing evidence (Court of Claims Act § 8-b [5]).

In the instant case, in spite of the fact that the statute does not require that documentary evidence supporting claimant's claim of innocence be submitted at the pleading stage *(see, Lanza v State of New York,* 130 AD2d 872, 873), claimant provided all the available records pertaining to the complainant's long-term psychological disorders as well as his own verified statements averring that the complainant had consented to their sexual encounter. The Court of Claims finding that this was insufficient to establish a likelihood of success at trial reflected an assessment of the credibility of the evidence adduced at this early stage, and this, in our view, was error. The psychiatric evidence on its face supports the inference that the complainant pathologically lied about the nature of her encounter with claimant and admitted as much to her therapists. Thus, claimant has submitted facts going well beyond a general attack on the complainant's credibility. Whether claimant succeeds at trial in carrying his burden of persuasion by the statutory clear and convincing standard will thus turn on the fact finder's weighing of the credibility of the documentary evidence, the testimony on innocence by claimant, the testimony of the complainant if she is called as a witness and any other evidence which may be submitted concerning the circumstances surrounding the incident, the making of the accusation, or pertinent to the complainant's disorder. In the absence of serious flaws in a claimant's statement of facts, the weighing of the evidence is more appropriately a function to be exercised at the actual trial, rather than on a motion to dismiss. We note that other cases

involving similar credibility issues have been held not subject to dismissal *(see, Grimaldi v State of New York,* 133 AD2d 97; *Lanza v State of New York, supra).* The Court of Claims should have accepted claimant's factual allegations as true for the purpose of determining whether there is a likelihood of success at trial *(see, Grimaldi v State of New York, supra,* at 100; *Lluveras v State of New York,* 136 Misc 2d 171, 175, n 7). In our opinion, claimant's pleadings, if believed, indicate that he could succeed in proving his innocence by clear and convincing evidence. Consequently, he should be allowed to proceed to trial.

As a final matter, we reject the State's contention that claimant lacks standing because the accusatory instrument was not dismissed on one of the grounds specified in Court of Claims Act § 8-b (3) (b) (ii). The dismissal of the accusatory instrument in this case was clearly predicated upon the prior order vacating the judgment of conviction pursuant to CPL 440.10 (1) (g). This satisfies the statutory requirement concerning the disposition of the conviction and underlying charge (Court of Claims Act § 8-b [3] [b] [ii] [A]). The statutory language does not require that the accusatory instrument be dismissed simultaneously with the vacatur or reversal of the judgment of conviction.

Judgment reversed, on the law, with costs, and claim reinstated. Mahoney, P. J., Kane, Weiss, Yesawich, Jr., and Levine, JJ., concur.