OPINION OF THE COURT
Gerard M. Weisberg, J.
Walter Gordon filed a claim under the Unjust Conviction and Imprisonment Act of 1984 (L 1984, ch 1009, adding Court *243 of Claims Act § 8-b) and the State has moved to dismiss. The issue before us is whether the reversal of claimant’s conviction as a result of the improper admission of identification testimony tainted by unduly suggestive procedures, and the later dismissal of the indictment in the interest of justice, satisfies the grounds for relief specified in section 8-b (3) (b) (ii) of the Court of Claims Act.
On September 22, 1979, Melvin Penn and Kendall Russell were robbed by 5 teenagers, 3 of whom were armed. Two days later, both Penn and Russell viewed some 400 photographs of young males at a police precinct. Although they were seated at opposite ends of a table, they conferred during the selection process. Claimant’s identification was the product of a "consensus” between Penn and Russell. (People v Gaddy, 98 AD2d 729, 730.)
On October 8, 1979, the complainants returned to the precinct and separately viewed lineups containing Gordon. They were not told that any of the men whose photographs they had selected would be present. Rather, they were instructed to see if they recognized any of the participants and to make an identification only if they were absolutely sure and 100% positive. Penn made a positive identification of claimant. Russell also selected him but stated that she was only 85% certain that he was one of the robbers.
At the first identification suppression hearing held under the authority of United States v Wade (388 US 218) and its progeny, the trial court found that the lineups were fairly conducted and ruled that both Penn and Russell could make in-court identifications and also, allowed Penn to testify to his previous lineup selection. At trial, both identified claimant and he was convicted. On appeal, the Second Department remitted for a de novo Wade hearing with the appeal to be held in abeyance pending such review. (People v Gaddy, 98 AD2d 729, 731, supra.)
At the second Wade hearing, it was developed that in addition to allowing the complainants to confer over the selection of photographs, claimant had been the shortest and youngest member of both lineups. Moreover, Russell’s recollection of the features of the robber she had identified as claimant was very confused. Based thereon, the trial court found the photograph selection and lineup procedures to be unduly suggestive. The Appellate Division agreed, reversed the conviction and remanded for a new trial at which the only identifi *244 cation testimony to be permitted would be in court by Penn who was found to have had an independent recollection of the robbers. (People v Gaddy, 115 AD2d 658; cf., United States v Wade, 388 US 218, supra.)
A new trial never took place however. After repeated adjournments necessitated by the District Attorney’s inability to locate Penn, Criminal Term of the Supreme Court dismissed the indictment, on claimant’s motion, in the interest of justice. (CPL 210.20.) The court felt that Gordon’s lack of a criminal record and the burden the repeated court appearances was having on his ability to earn a living justified such relief in the face of the prosecution’s lack of diligence. (Cf., Matter of Holtzman v Goldman, 71 NY2d 564.)
Gordon, who had been allegedly incarcerated for approximately five years at the time of the reversal, then filed a claim for $1,000,000 under section 8-b of the Court of Claims Act. Defendant moves to dismiss asserting that the reversal of claimant’s conviction was on constitutional grounds excluded from Court of Claims Act § 8-b (3) (b) (ii).
In order to present a claim under section 8-b, claimant must establish by documentary evidence, among other things, that: "his judgment of conviction was reversed or vacated, and the accusatory instrument dismissed or, if a new trial was ordered, either he was found not guilty at the new trial or he was not retried and the accusatory instrument dismissed; provided that the judgement of conviction was reversed or vacated, and the accusatory instrument was dismissed, on any of the following grounds: (A) paragraph (a), (b), (c), (e) or (g) of subdivision one of section 440.10 of the criminal procedure law; or (B) subdivision one (where based upon grounds set forth in item (A) hereof), two, three (where the count dismissed was the sole basis for the imprisonment complained of) or five of section 470.20 of the criminal procedure law” (Court of Claims Act § 8-b [3] [b] [ii]).
Inasmuch as the Appellate Division reversed and remanded, it would appear that that tribunal was acting pursuant to the first paragraph of CPL 470.20, which is the only subdivision of that statute which authorizes a remand. Section 8-b (3) (b) (ii) therefore requires that the reversal have been under paragraphs (a), (b), (c), (e) or (g) of CPL 440.10 (1). These grounds are limited to jurisdictional questions (CPL 440.10 [1] [a]); fraud, misrepresentation or duress (CPL 440.10 [1] [b]); false material evidence (CPL 440.10 [1] [c]); incapacity of the defen *245 dant (CPL 440.10 [1] [e]); and newly discovered evidence (CPL 440.10 [1] [g]). While due process considerations serve as the basis for some or all of these provisions (see, People v Novoa, 70 NY2d 490), reversals on other constitutional grounds are excluded. (See, CPL 440.10 [1] [d], [h].)
Claimant asserts that his conviction was reversed under CPL 440.10 (1) (b), which authorizes the vacating of a judgment "procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor”. Claimant argues that the police responsible for conducting what was found to be an unduly suggestive lineup and photograph viewing session were persons acting for or on behalf of the prosecution. While this may be true, it is insufficient to justify relief under CPL 440.10. Implicit in the argument is the assertion that the detectives’ conduct was tantamount to fraud, misrepresentation or duress within the meaning of the statute. We disagree.
CPL 440.10 is a codification of the writ of coram nobis. (35 NY Jur 2d, Criminal Law, § 2968.) Under this doctrine, as found in CPL 440.10 (1) (b) and (c), a new trial will be ordered only where a guilty plea was procured through a misrepresentation by the prosecution or court to the defendant concerning a possible sentence (see, e.g., People v Shelton, 100 AD2d 775), or other material element of the case (see, e.g., People v Pelchat, 62 NY2d 97; People v Picciotti, 4 NY2d 340), or where a judgment was obtained on the basis of false evidence which a prosecutor knew to be such. (See, e.g., People v Savvides, 1 NY2d 554; cf., People v Fancher, 53 AD2d 776.) Although presently listed as separate provisions of CPL 440.10, typically the same fact pattern can justify relief under either subdivision. For example, in People v Robertson (12 NY2d 355, 360), where the defendant was convicted upon a detective’s unintentional false testimony, which he later recanted, the court reversed and stated: "giving of carelessly false testimony is in its own way as much of a ’fraud’ on the court as if it were deliberate”.
Thus, a plea or judgment obtained by false testimony is one procured through fraud. However, the sine qua non for relief under either subdivision is that the defendant or court was told something which was not true. While it is possible that the police could so threaten or mislead a witness as to actually create a false identification sufficient to justify CPL 440.10 (1) (b) or (c) relief (cf., Lluveras v State of New York, 136 Misc 2d 171; People v Attiya, 128 Misc 2d 452, revd 126 AD2d 733), *246 that is not the situation here. The photograph viewing session was tainted by the complainants’ conduct alone, and although the lineups failed to pass constitutional muster, the procedures employed were hardly tantamount to fraud. Neither Penn nor Russell wére told that the suspects they had selected would be present and they were warned to make an identification only if 100% positive. (Cf., People v Ballard, 140 AD2d 529.) Most importantly, Russell never recanted her testimony and asserted that she was 85% certain that claimant was her assailant. The Appellate Division reversal was not based on a false identification having been made but on the grounds that an incorrect identification was possible and that due process considerations prohibited subjecting claimant to such risk. (Cf., People v Ballott, 20 NY2d 600.) The reversal was therefore on constitutional grounds (see, CPL 440.10 [1] [h]) other than those authorized by Court of Claims Act § 8-b (3) (b) (ii). (Forest v State of New York, NYLJ, Jan. 7, 1988, at 12, col 5.) The claim fails to allege a cause of action.
An alternative basis for our holding, although not raised by the parties, can be found in the question of whether the trial court’s dismissal of the indictment must also come within the statutes listed in section 8-b (3) (b) (ii). That section provides that if a new trial was ordered but the defendant was not retried, in order to be entitled to present a claim before this court, we must find "that the judgment of conviction was reversed or vacated, and the accusatory instrument was dismissed, on any of the following grounds [listing subsections of CPL 440.10 and CPL 470.20].”
The language quoted above is susceptible to at least two interpretations. First, that the reversal or vacating and the dismissal must all have been under one of the enumerated statutory bases. Alternatively, the language can be viewed as providing that if the reversal or vacating was on approved grounds, the subsequent dismissal at the trial court level could have been for any reason. Were we free to choose, we believe the latter is the correct interpretation. Stewart v State of New York (133 AD2d 112 [2d Dept]), however, appears to have foreclosed this avenue of inquiry with respect to this claimant.
In Stewart, the claimant had his conviction reversed and the case remanded based on " 'outrageous prosecutorial misconduct, depriving defendant of a fair trial’ ”. (Supra, at 112, quoting People v Stewart, 92 AD2d 226, 227.) A new trial was not held and the indictment dismissed, although the basis for *247 this disposition was not revealed. Without addressing the issue of whether a reversal for prosecutorial misconduct satisfies section 8-b (3) (b) (ii) (but see, CPL 440.10 [1] [f]), the court stated: "Significantly, on this record, it cannot be determined whether the accusatory instrument was dismissed on any one of the limited grounds enumerated under Court of Claims Act § 8-b (3) (b) to demonstrate his entitlement to pursue his claim.” (People v Stewart, 133 AD2d 112, 113, supra.) Thus, Stewart explicitly holds that the dismissal on remand, regardless of the basis for the reversal at the appellate level, must also have been on one of the enumerated statutory grounds. (See also, Heiss v State of New York, 143 AD2d 67, following Stewart v State of New York, supra.)
Inasmuch as this claim arose in the Second Department, claimant is bound by this holding. (Court of Claims Act § 24.) We do note, however, that without discussing or citing Stewart (supra), the Third Department recently reached a contrary result in Dozier v State of New York (134 AD2d 759).
In Dozier (supra), the claimant was convicted of rape. On the basis of newly discovered evidence that the complainant had psychiatric problems and may have perjured herself, the County Court vacated the judgment pursuant to CPL 440.10 (1) (g) and ordered a new trial. Thereafter the indictment was dismissed, on the District Attorney’s motion, under the interest of justice statute (CPL 210.40) because the prosecution no longer believed it could sustain its burden of proof. Dozier then filed a claim under section 8-b. In response to the State’s contention that he lacked standing because the accusatory instrument had not been dismissed under the grounds specified in section 8-b (3) (b) (ii), the court stated: "The dismissal of the accusatory instrument in this case was clearly predicated upon the prior order vacating the judgment of conviction pursuant to CPL 440.10 (1) (g). This satisfies the statutory requirement concerning the disposition of the conviction and underlying charge (Court of Claims Act § 8-b [3] [b] [ii] [A]). This statutory language does not require that the accusatory instrument be dismissed simultaneously with the vacatur or reversal of the judgment of conviction.” (Supra, at 762.)
Moreover, even prior to Dozier (supra), Judge Frank S. . Rossetti of this court, in a thorough analysis of section 8-b, held that where there had been an acquittal after a reversal and retrial, the basis for the reversal need not be limited to the statutes enumerated in section 8-b (3) (b) (ii). (Ferrer v State of New York, 136 Misc 2d 218.) In support of the *248 proposition that the "provided” clause in that section did not apply to every phrase preceding it in the statute, Judge Rossetti observed that, for example, it could not apply to dismissals stating: "the fact the listed grounds are not ones for dismissal negates the * * * interpretation * * * [that] the dismissal [must] be on a specified ground”. (Supra, at 220, n 2.) Ferrer was then unanimously affirmed by the First Department on Judge Rossetti’s opinion. (136 AD2d 487.)
Thus, it appears the First, Second and Third Departments have all reached differing conclusions with respect to this issue. The Second Department requires both the reversal or vacatur and the dismissal to have been on one of the enumerated grounds. The First Department would test only the reversal or vacatur and the Third Department lies somewhere in between. (See also, Ivey v State of New York, 138 AD2d 963 [4th Dept] [reversal may be on any ground where claimant acquitted on retrial].)
A close reading of the statute, it is submitted, supports the Ferrer interpretation over the Stewart or Dozier views. We first note that section 8-b explicitly authorizes relief to defendants who have had their convictions reversed or vacated with a new trial ordered, but then had the accusatory instrument subsequently dismissed. (Dozier v State of New York, 134 AD2d 759, supra.) The sole issue is on what grounds, if any, the dismissal must have been based. Reading section 8-b (3) (b) (ii) as requiring the dismissal to have been under CPL 440.10 or 470.20, however, leads to absurd and contradictory results. It literally insists on the satisfaction of a condition which is impossible to meet.
CPL 470.20 is directed at appellate pourts and only authorizes a dismissal as part of the appellate process. Similarly, CPL 440.10 only authorizes dismissals in conjunction with a simultaneous motion to vacate. After a judgment has been reversed or vacated and the matter remanded, neither provision has any direct application. (Lluveras v State of New York, 136 Misc 2d 171, 173, n 4, supra.)
A dismissal is then only obtainable pursuant to CPL 170.30, 170.50 or 210.20. A dismissal not granted simultaneously with a reversal or vacatur can therefore never be based directly on CPL 440.10 or 470.20. But as we have noted at the outset, section 8-b explicitly authorizes relief in the case of nonsimultaneous dismissals. Thus, to construe CPL 440.10 and 470.20 as also applying to the dismissal would result in section 8-b (3) *249 (b) (ii) contradicting itself. It would both authorize a result and require an impossible condition be met in order to achieve that result. It is axiomatic that ambiguous statutes are to be construed to avoid absurd results. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141,144.)
With respect to Dozier (supra), initially it must be noted that the extent of its holding is unclear. On the one hand, it can be viewed as being in complete harmony with Ferrer (supra). Alternatively, the "predicated upon” language can be seen as a perceived necessity that the basis for the dismissal must have been in some way connected to or indirectly based on CPL 440.10 or 470.20. Assuming the latter was intended, aside from the fact that the statute does not so provide, the requirement, it is submitted, is unworkable or illusory.
How do we decide if a successful motion under CPL 170.30, 170.50 or 210.20 was predicated upon CPL 440.10 or 470.20? For example, assume a judgment is reversed for perjured testimony, remanded for a new trial and then dismissed in the interests of justice. If the court explicitly bases its dismissal on the prior perjury coupled with the defendant having served the bulk of any sentence which might be imposed if he were reconvicted is the dismissal on an authorized perjury ground or an unauthorized time-served ground? How would we decide if both factors were stated? Or would the explicit recital of the grounds of the prior reversal or vacatur as one of several factors automatically satisfy section 8-b (3) (b) (ii) regardless of the others considered? Is that what Dozier (supra) means by "predicated upon”? But would not the facts of a prior reversal or vacatur always be before the court on a motion under CPL 170.30, 170.50 or 210.20 and therefore at least to some extent always a factor? If that would satisfy the "predicated upon” test, then it would be met in every case where the reversal or vacatur were on authorized grounds and Dozier would be saying no more than Ferrer (supra), i.e., that only the basis for the reversal or vacatur need be examined.
We therefore conclude that the preferable interpretation is where the reversal or vacatur satisfies the statutory criteria specified in section 8-b, a subsequent dismissal may be on any grounds. In this manner contradiction is avoided. Moreover, the punctuation employed by the Legislature in drafting section 8-b (3) (b) (ii) confirms this construction. Examining the clause directly preceding the "proviso”, we note that the words "and the accusatory instrument was dismissed” is not set off from the rest of the clause. In the proviso, however, the *250 identical language is set off by commas and then immediately followed by the list of grounds for reversal or vacatur. As a corollary to the rule of the "last antecedent,” a proviso at the end of a clause modifies each preceding antecedent except that which directly precedes it and is set off by commas. (McKinney’s Cons Laws of NY, Book 1, Statutes § 254.) The clear function of this punctuation is therefore to indicate that the enumerated statutes apply only to the reversal or vacatur and not to the dismissal.
Be that as it may, the dismissal here was on interest of justice grounds, the factors being a prior reversal based on a tainted identification, claimant’s lack of a prior record and the prosecution’s inability to locate the only competent complaining witness. Under Stewart (supra), the basis for this dismissal fails to satisfy section 8-b (3) (b) (ii).
Defendant also argues that the claimant’s conclusory allegations of innocence are "patently insufficient” inasmuch as the Appellate Division found that one of the complaining witnesses had an independent recollection of him. In light of our decision to dismiss on other grounds, we do not reach this issue, nor the related question of whether some or all of the suppressed evidence would be admissible in this civil proceeding. (Compare, Lanza v State of New York, 130 AD2d 872, with Herndon v City of Ithaca, 43 AD2d 634, appeal dismissed 35 NY2d 956; Dixson v State of New York, 30 AD2d 626; Moses v State of New York, 137 Misc 2d 1081; McFaddan v State of New York, Ct C1, Dec. 1, 1987, Orlando, J.)
Upon the foregoing, defendant’s motion is granted and the claim is dismissed.