OPINION OF THE COURT
Joseph Fisch, J.
Defendant was convicted after a jury trial of forcible sodomy and related offenses perpetrated against a woman he knew and had previously dated. He was sentenced by this court to an indeterminate term of imprisonment of 9 to 18 years’ incarceration.
Defendant now moves under CPL article 440 to vacate his conviction on the ground that his constitutional rights were violated because the jury was not aware of the victim’s psychiatric history. Said victim is currently incarcerated in another county, pending prosecution for an attempted murder committed after defendant’s conviction.[1]
In support of his application, defense counsel subpoenaed Family Court records and medical records for the court’s in *352 camera examination. The court reviewed such records and provided copies to counsel and the People.[2]
The records show, inter alia, that the complainant was a patient in a psychiatric hospital in 1989, before the accused perpetrated the crimes, and that she, as an adolescent, had stabbed a classmate. They also indicated the complainant suffered and continues to suffer from bouts of paranoia. She is chronically delusional, attributing hostility to others.
The People oppose the defense motion, contending: (1) they had no knowledge of complainant’s history and, (2) if they had, there was no duty to disclose it under Brady v Maryland (373 US 83 [1963]), since these records were not under their control, and (3) a diligent pretrial investigation by the defense would have unearthed these records, which the defense could have subpoenaed pretrial. Finally, the People argue that (4) the defense failed to proffer expert testimony that such hospital and Family Court records are relevant and probative of the complainant’s mental condition at the time of the trial.
The People’s arguments fail to address the primary basis for granting defendant’s CPL 440.10 motion, to wit, that the jury’s ignorance of complainant’s psychiatric history denied this defendant a fair trial,- due process of law, and the right to confront adverse witnesses. However, the People’s objections will be addressed infra.

A Diligent Investigation Would Not Have Guaranteed Discovery Of These Records

Defense counsel learned of the existence of the complainant’s 1989 psychiatric records and Family Court records when he subpoenaed the records of her hospitalization following the subway slashing. Had it not been for the media coverage of this subsequent crime and complainant’s arrest on charges of attempted murder, defense counsel could only guess at whether, where, and when the complainant was hospitalized for psychiatric problems. The prosecution now contends that the defense could have had an investigator appointed to speak with her friends and relatives. However, during trial, the People informed the court that defendant’s friends had contacted and intimidated the complainant. Accordingly, pursuant to the People’s request, this court ordered the defendant to refrain from any contact with the complainant, her friends or relatives. Such an investigation by the defense would have violated this order.

*353
The Complainant’s Psychiatric History Is Relevant

The People also argue that absent expert testimony at this juncture, there is no evidence now before this court that the complainant’s past or subsequent mental illness is relevant to her mental condition at trial. This argument has no merit. In view of the victim’s extensive psychiatric history and mental problems, such background would be highly relevant.
The court takes judicial notice that mental health professionals testifying at retention and/or recommitment hearings cite a patient’s past mental condition as indicative of future prognosis. (See, e.g., Matter of Francis S., 87 NY2d 554, 561 [1995]; see also, People v Rivera, 138 AD2d 169 [1st Dept 1988], lv denied 72 NY2d 923 [1988].) If this defendant is retried, a psychiatrist retained as a defense expert could render a hypothetical opinion after examining relevant medical records as to the impact of such mental condition on a person’s ability to tell the truth. (See, e.g., People v Bugayong, 182 AD2d 450 [1st Dept 1992].)[3]
In any event, no expert, no matter how qualified, would be permitted to conclusively evaluate the complainant’s mental state at trial. Expert testimony informs but does not preempt the jury’s evaluation of the evidence. (See, e.g., People v Cratsley, 86 NY2d 81 [1995] [expert testimony is not required to prove mental incapacity of rape victim].) Expert testimony before this court would be superfluous because the evaluation of witness credibility is the sole province of the trier of fact. In this case, the jury was denied opportunity to make this judgment.

The Principles Of Brady Were Violated By The Prosecution’s Failure To Investigate Its Witness

Failure to make inquiry of this complainant in the context of this case violated the People’s obligation under Brady v Maryland (supra). A criminal prosecution is not a contest or a poker game (Williams v Florida, 399 US 78, 82 [1970]). Unlike a defense attorney, whose duty is zealous advocacy on behalf of his client, a prosecutor is a quasi-judicial official. His conduct must meet a higher standard because he *354 has the resources and power of the State to utilize against the accused.
Brady v Maryland (supra) sought to conform this principle more closely with actual daily practice in the criminal justice system. In furtherance of this goal, the United States Supreme Court ruled that prosecutors must disclose relevant exculpatory material of which they had knowledge or constructive knowledge on request. Failure to do so is reversible error of constitutional magnitude. Subsequently, the courts held that impeachment evidence is Brady material if such material is constructively possessed by the prosecutor. For example, information on file with the police is deemed constructively possessed by the prosecutor even if the prosecutor assigned to the case had no knowledge of it.
The distinction between the prosecutor’s obligation when defense counsel requests a specific type of exculpatory information and the prosecutor’s duty when there is no request is slight. The New York Court of Appeals in People v Vilardi (76 NY2d 67 [1990]) ruled that a Brady violation discovered post-conviction required the court to set aside such conviction if there was a reasonable possibility that defense counsel could have used such material to his advantage and if counsel had requested such information.
In cases where counsel made no request, the standard applied in vacating a judgment is whether there was a reasonable probability as opposed to a reasonable possibility that counsel could have used such information to favorably affect the verdict.
In the case at bar, the original pretrial defense discovery demand set forth a request for any history of injury, substance abuse, or mental or emotional conditions which might affect the witness’ ability to perceive, recall and testify accurately. The issue herein concerns what, if any, duty is imposed on the prosecutor to investigate a witness to ascertain whether or not anything in the witness’ background would be relevant to credibility.
Courts must strike a balance between the witness’ right to privacy and a defendant’s right to a fair trial. In People v Dudley (167 AD2d 317 [1st Dept 1990]), the trial court refused to allow the defense attorney to examine the robbery victim’s psychiatric records which the court had already reviewed, in camera. The Appellate Division reversed the defendant’s conviction on the ground that even if such records were not sufficiently material and probative to justify breaching the *355 victim’s privacy, defense counsel must have the opportunity to present arguments supporting their admissibility. A trial court cannot substitute its judgment for that of a defense attorney, who, within the bounds of ethics and law, must be a zealous advocate for his client.
If the only evidence against the defendant is the testimony of one witness, the prosecutor is obligated under Brady (supra) to investigate such witness to ascertain if any condition impairs such witness’ ability to perceive, interpret and recall events. In such case, the integrity of the verdict requires an accurate evaluation of the witness’ reliability. (Dozier v State of New York, 134 AD2d 759 [3d Dept 1987]; see also, People v Grice, 188 AD2d 397 [1st Dept 1992], lv denied 81 NY2d 840 [1993] [Brady required the New York County prosecutor to ascertain and disclose to the defense the substantially beneficial plea bargain made by its witness with the Bronx District Attorney in such witness’ pending Bronx case].)[4] As noted supra, the defense specifically requested the People pretrial to disclose any history of substance abuse by the complainant, or any mental or emotional condition which might impair her ability to perceive and recall.

Jury’s Unawareness Of Complainant’s Psychiatric History Violated Defendant’s Constitutional Rights

(1) defendant’s right to due process violated
The constitutional guarantee of due process of law includes a meaningful right to be heard. If a witness’ mental condition could affect his/her ability to accurately perceive and recall, evidence of such condition is relevant in a criminal prosecution. The jury which must evaluate the witness’ testimony should certainly be made aware if a witness has a history of paranoia, hallucinations or delusions. (People v Rensing, 14 NY2d 210 [1964]; see also, People v Dudley, supra, at 317-318, where the Court held that since the People’s case rested solely upon the eyewitness testimony of the complainant, who had a long history of psychiatric illness, the trial court should have permitted the defense to offer expert *356 testimony as to the witness’ condition and treatment, and its effect, if any, upon his capacity at the time of the incident, citing People v Parks, 41 NY2d 36 [1977]; People v Freshley, 87 AD2d 104 [1st Dept 1982].)
(2) defendant’s right to confront adverse witness VIOLATED
The core of the rights guaranteed to an accused under the Confrontation Clause of the Sixth Amendment of the US Constitution is the right to cross-examine the witnesses against him. Defense counsel has the right to inquire about incidents not normally admissible, such as acts underlying a witness’ juvenile delinquency adjudication, if such information would be probative of the witness’ bias and/or motive to lie. (Davis v Alaska, 415 US 308 [1974].)
In the case at bar, the victim’s psychiatric history was not simply relevant to her general credibility. Had the sexual relations occurred with her consent, no crime would have been committed. Inasmuch as her mental condition could be relevant to the accuracy of her perception of the incident, the jury’s ignorance of her psychiatric records denied the defense the opportunity to fully cross-examine her.
People v Dozier (85 AD2d 846 [3d Dept 1981]) affirmed the defendant’s conviction of forcible rape and sodomy allegedly perpetrated against an acquaintance. Subsequently, the alleged victim was arrested on unrelated criminal charges. This arrest led to the discovery of her extensive psychiatric records before and after she was purportedly raped by Dozier. His motion to set aside the verdict was granted, and the People elected not to retry him. Dozier subsequently sued the State, but the Court of Claims initially dismissed the complaint. Dozier appealed and the Appellate Division, Third Department, reversed the Court of Claims order, reinstating his lawsuit. The Appellate Division ruled that the complainant’s psychiatric history was material and relevant to the central issue — did she tell the truth when she said Dozier raped her? The Court, in so holding, stated: "In 1982 [after Dozier’s conviction] new evidence was discovered which consisted of records and reports by a number of therapists concerning the complainant’s psychiatric history, both before and after the incident involving claimant [Dozier], The evidence demonstrates that complainant suffers from serious psychological disorders involving confusion about her sexual identity, distorted perceptions of her encounters with men, patterned perceptions of herself as a victim, and *357 extreme behavioral reactions to rejection * * * [Claimant has submitted facts going well beyond a general attack on the complainant’s credibility.” (Dozier v State of New York, 134 AD2d 759, 760-761, supra.)
The jury was unaware of this complainant’s psychiatric history. This ignorance impaired the jury’s ability to accurately evaluate her testimony and thus violated the defendant’s constitutional rights to a fair trial, to due process of law and to confront adverse witnesses.
Accordingly, defendant’s motion to set aside the conviction is granted.

. The victim is charged with an unprovoked knife slashing of another woman who was a total stranger to this complainant, while both were passengers in the subway.

. These certified records are competent evidence. (CPLR 4518, 4540.)

. Compelling a witness or a complainant to submit to a psychiatric examination by a defense expert is generally disapproved absent extraordinary circumstances. (See, e.g., People v Earel, 89 NY2d 960 [1997]; see also, People v Herring, 227 AD2d 658 [3d Dept 1996], lv denied 88 NY2d 986 [1996]; People v Gutkaiss, 206 AD2d 628 [3d Dept 1994], lv denied 84 NY2d 936 [1994].)

. The People incorrectly rely on People v Diaz (134 AD2d 445 [2d Dept 1987], lv denied 71 NY2d 895 [1988]) as authority for the purported principle that the People never have an affirmative duty to investigate their witness. The Court in Diaz (supra) simply stated that the People had no such duty in all cases; in any event, Diaz held that the witness’ medical history was not Brady material under the facts of that particular case.