THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERMAN FRESHLEY, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES ACKLIN, Appellant.

First Department, May 27, 1982

APPEARANCES OF COUNSEL

*Carol Ethridge Gette* of counsel (*Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Philip L. Weinstein* of counsel (*William E. Hellerstein,* attorney), for Herman Freshley, defendant.

*Lofton P. Holder* for Charles Acklin, defendant.

### OPINION OF THE COURT

FEIN, J.

Defendants stand convicted, after a jury trial, of robbery in the second degree. Defendants' convictions are founded upon events which took place on March 19, 1979 when they, aided by another person, allegedly robbed Steven Daniels.

The issue on appeal has its source in the fact that the complaining witness is mentally retarded and suffers from a speech impediment. At the *Wade* hearing the court conducted an inquiry as to whether Daniels understood the nature of an oath, the classic inquiry as to whether he was competent to testify. Over objection, the court ruled that Daniels was competent.

Prior to trial the prosecution moved to allow Daniels' school psychologist to testify on the People's direct case about the degree of Daniels' impairment. Among other things, the prosecutor sought to have the psychologist render an expert opinion as to how Daniels' mental retardation affected his capacity to see, perceive, conceptualize and make judgments. The prosecutor further wanted the psychologist to give in detail both a description and the results of the various intelligence and other tests which had been given to Daniels, and to render an evaluation in comparison with other persons at the occupational training center which Daniels attended. In short, the psychologist's diagnosis and his interpretation of the diagnosis was offered to demonstrate Daniels' ability to observe and to report on his observations.

The Trial Justice, Honorable SHELDON LEVY, ruled that such broad testimony would not be permitted. It would impinge upon the court's duty to determine the competence

of the complaining witness to testify, as well as the jury's classic function to determine credibility (*People v Parks,* 41 NY2d 36, 48). In a careful and thoughtful opinion (*People v Acklin,* 102 Misc 2d 596, 601), Justice LEVY ruled that pursuant to *People v Parks* (*supra*), the psychologist's testimony as an "interested observer" was admissible on a limited basis: "The interested observer witness should be allowed to testify briefly as to his background, qualifications and present employment, if any; his past professional or personal contacts with and knowledge of the impaired witness; the nature and degree of the impairment, including the condition of the witness based upon direct observation; scientific and objective data, including mental development age, intelligence test quotient and functioning grade level of the handicapped witness; the infirm witness' work record if any; and observable societal and personality traits of the impaired."

In opposing the People's application, defense counsel requested that if, over objection, the court concluded that a psychiatrist or psychologist could testify on behalf of the People, there should be an adjournment to permit the defendant to have the complaining witness examined by an independent psychologist. This request was denied by the court. The court concluded that the psychologist could testify not as an expert, but rather as "an interested observer".

The first witness called by the People was Gil Horowitz (Horowitz), Daniels' school psychologist, who had been working with Daniels for about one year before trial. He had met with Daniels approximately 12 times and administered various psychological tests to him. Horowitz testified that Daniels achieved a score of "61 overall" on the Wexler Intelligence Test. Horowitz explained to the jury that this meant that Daniels was "near normal mildly retarded", with a "speech impediment which makes him seem less able". Horowitz further testified that although Daniels was physically 20 years of age, he had a mental age of approximately 14 or 15.

On cross-examination, Horowitz acknowledged that he did not know whether Daniels could read. The tests used did not require reading ability. According to Horowitz, a

mildly retarded person could perform mental tasks but would do them "slower than normal".

Defendant Freshley's attorney again objected to Horowitz testifying at the trial and reiterated her demand for the tests employed by Horowitz upon the ground that to refuse to make such tests available denied Freshley his right of confrontation. Defendant Acklin's attorney declined to cross-examine Horowitz.

Daniels testified that he attended the Manhattan Occupational Training Center, a school for those with learning problems, and was employed in a factory under a work-study program at school. On March 19, 1979, after attending school in the morning, he went to Times Square. As he walked east on 41st Street between Seventh and Eighth Avenues, he was approached by defendants and a woman. He had seen Acklin once before standing on Eighth Avenue with a bottle of wine, but did not recognize Freshley or the woman. Daniels testified that after giving one of the men a cigarette in response to a request, the men pushed him against the wall and the woman took $14 from his wallet. She returned the wallet at Daniels' behest. Acklin warned Daniels not to go to the police or "I'll blow your head off".

After the robbery, Daniels walked to the police substation at 42nd Street and reported it to Police Officer Schroeder. Schroeder and his partner walked with Daniels back to 41st Street to look for the robbers. There was a discrepancy between Daniels' testimony and that of Schroeder as to the exact sequence of events thereafter. It is clear, however, that after about ½ hour, Daniels pointed out Freshley who was standing with a group of people near a liquor store. Freshley, holding a bottle of wine, was wearing sunglasses and a hat. Schroeder arrested Freshley. A search revealed no money.

Daniels testified that two days later, in the same area on 41st Street, he saw Acklin, the taller robber whom he had recognized at the time of the robbery. Daniels went to 42nd Street and again found Officer Schroeder. The officer and Daniels walked back to 41st Street where Daniels pointed Acklin out in a crowd as the second robber. Schroeder arrested Acklin.

Schroeder testified that he was newly assigned to the Times Square area in March, 1979, and that neither he nor Daniels had ever seen each other before the robbery. Schroeder was one of approximately 10 to 15 officers assigned to the Times Square area on a given day, and one of 100 different officers on duty in the course of a week. Schroeder's description of the robbers differed somewhat from that of Daniels. Schroeder testified that because of Daniels' speech impediment and his excitable condition, the officer had difficulty understanding him. He had to ask Daniels several times to calm down and repeat himself. Apparently as a consequence, the descriptions which the police officer wrote on the complaint report differed from Daniels' description at trial. Thus the heights of the two robbers and their respective ages were at variance. Schroeder's report indicated that the woman was 3 feet tall because Daniels had described her as "a short little girl" and had held out his hand "at shoulder length". According to Schroeder, he had asked Daniels if the woman was a midget and Daniels had responded that she was. In his testimony, Daniels denied telling Schroeder that the woman was a midget.

The issues on appeal are: (1) whether the trial court abused its discretion by allowing a mentally retarded witness to testify under oath, over objection, where the court's inquiry showed the witness had difficulty in clearly articulating the meaning of an oath, the difference between the truth and a lie, and the significance of telling a lie; (2) whether defendants' rights were violated by the trial court's ruling which permitted the prosecution in its direct case to elicit testimony from a psychologist explaining the complaining witness' mental retardation; and (3) whether the court erred in refusing to permit a defense psychologist to examine the complainant or in refusing to direct the prosecution to furnish defendants with the tests and other data used by the psychologist in evaluating the complaining witness.

We are all agreed that the Trial Judge properly found that Daniels was competent to testify. In our view, the court properly found that Daniels had sufficient intelligence to understand the nature of an oath and to give a

reasonably accurate account of what he saw and heard respecting the pertinent subject matter. He had the requisite minimum conception of the obligations of an oath and the consequences of false testimony (*People v Parks,* 41 NY2d 36, 45-46, *supra*). As that case holds, there are no set rules to determine whether such a witness should be sworn. The matter is one of discretion, best left to the Trial Justice, not to be disturbed unless the ruling is plainly an abuse of discretion.

■ A majority of us are agreed that the Trial Justice did not commit error in permitting the school psychologist to testify without allowing a defense expert to examine Daniels. A minority are of the view that the issue is solely one of credibility, and that to permit such a witness to testify either as an expert or, in Justice LEVY's phrase, as "an interested observer", constituted prejudicial "bolstering" impinging on the jury's function as the sole judge of credibility.

■ All of us are agreed that the Trial Justice erred in not directing the prosecution to make available to the defense attorneys copies of all reports and records and other data, including the intelligence tests administered or examined by the psychologist as a basis for his testimony. To permit the psychologist to testify as "an interested observer", without making available all of the data he examined or relied upon in coming to his conclusion, unduly prejudiced the defense.

According to the rule laid down in *People v Parks* (*supra,* p 47), relied on by Justice LEVY, "[t]he testimony of specialists or others with particular knowledge of the witness' mental or physical condition may provide invaluable assistance to the jury". We conclude from *People v Parks* (*supra*) and *People v Acklin* (102 Misc 2d 596, *supra*), the following conditions must exist for admissibility of the testimony of the specialist or interested observer: (1) it must be shown that the complainant or a crucial witness has an infirmity or impairment which may affect his capacity to testify; (2) the infirm or handicapped witness must be found legally competent to testify; (3) the infirm or impaired witness must actually testify; (4) the testimony of such witness must be crucial to the case; (5) the ability of the infirm or

impaired witness to testify must actually be in issue; (6) the testimony of the impaired witness must be otherwise admissible under recognized rules of evidence; and (7) the testimony of the specialist or interested observer must not be used merely to bolster the testimony of the impaired or infirm witness.

Obviously the opposing party must be afforded an opportunity to cross-examine the specialist or interested observer. The rule is well settled that where an expert witness testifies on the basis of documents or other data not available to the defense, the defense is entitled to an opportunity to explore such data on cross-examination (*People v Crossland,* 9 NY2d 464, 467; *People v Faber,* 199 NY 256, 266; see 3A Wigmore, Evidence [Chadbourn rev ed], § 992; *People v Sugden,* 35 NY2d 453, 461; *People v Stone,* 35 NY2d 69, 75, 76). The same rule should apply to a witness such as the psychologist here.

A witness' competency is a matter of law to be determined by the court. It is the exclusive province of the court, whose discretion will ordinarily not be interfered with, on the principle that the court has the witness before it and is best able to make the judgment as to competence. (*People v Parks, supra; People v Washor,* 196 NY 104; *Wheeler v United States,* 159 US 523, 524-525.) However, as stated in *Parks,* it is within the traditional and exclusive province of the jury to determine credibility. In short, in determining whether the testimony should be credited and what weight should be assigned to it, the jury is supreme. Although it has no power to challenge the court's determination as to competence, it can, and indeed, it is its function to determine whether the testimony of the witness, truthful or not, is too weak to be given any credit. The jury need not necessarily conclude that the witness is incredible but may determine that the witness' infirmity is such that his testimony cannot be evaluated or relied upon in arriving at the conclusion which it is the jury's function to do.

As stated in *Parks* (41 NY2d 36, 47-48, *supra*):

"In order that the jury may accurately appreciate the nature of the witness' infirmity, the trial court, in its sound discretion, may permit experts or others with personal

knowledge of the witness to explain and describe the witness' condition. In this case, for example, the purpose of the teacher's testimony was to explain an apparent mental deficiency on the part of the complainant. The teacher testified that although the complainant was chronologically 16 years old, she was operating on a mental level comparable to a child of 12 or 13. With this information, the jury could, from a scientific perspective, intelligently evaluate the complainant's testimony.

"We are careful to note that the teacher's testimony was restricted by the court to testimony of an objective nature."

Here it is arguable whether the testimony of the school psychologist was that of an expert. The Judge ruled that this was not expert testimony and so advised the jury. He plainly and clearly told the jury that the psychologist was merely testifying as an interested observer, passing on to the jury the objective facts, not opinion. In this respect the Judge concluded that the subject matter of his testimony was similar to that of the school teacher whose testimony was ruled admissible in *Parks* (*supra*). Horowitz testified as to Daniels' score on a standard intelligence test, the level of retardation as indicated by the school records, and Daniels' mental age as compared with his physical age. The Trial Judge specifically limited the testimony to these areas.

The Trial Judge refused to allow the defense to examine the individual intelligence tests administered to Daniels at his school. The only documents made available were copies of the observation and evaluation reports prepared by personnel at Daniels' school. In our view this was not sufficient. Defendants were entitled to have made available the individual intelligence tests and any other data examined by Horowitz as a basis for his testimony.

■ It is fundamental that a defendant is entitled to "a meaningful opportunity to be heard" (*Boddie v Connecticut,* 401 US 371, 377). Whatever the rights of a witness to privacy and freedom from harassment, where the testimony is crucial, the defense should have the right to show that the witness had a mental illness which may have affected his ability to perceive, recall and relate events

accurately (*People v Rensing,* 14 NY2d 210; see *People v Porcaro,* 6 NY2d 248; *People v Jackson,* 10 NY2d 510, 513-514). We do not reach the question of whether the court had power to order a mental examination of Daniels (see *People v Lowe,* 96 Misc 2d 33). Assuming such power, we cannot say that there was an abuse of discretion under the circumstances of this case in denying the defendant an opportunity to conduct a psychological or psychiatric examination of the complaining witness. We note the rule that where a defendant proposes to offer psychiatric testimony in support of an insanity defense, it must be demonstrated that he has fully co-operated and submitted to such an examination where sought by the People (*Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, 442).

■ The rule is plain that where the prosecution is permitted to call a witness, expert or not, who testifies as to a fact in issue or a conclusion to be drawn, the defendant is entitled to examine the underlying data, the basis for the testimony.

This was even more essential here in the light of the fact that the jury may well have regarded Horowitz as an expert, despite the court's instructions. His profession and pedigree were presented to the jury. In the light of his qualifications, the jury was undoubtedly impressed by his testimony that Daniels was near normal, that his disability was merely that he learned more slowly than others, and that it seemed more serious because of a speech impediment which did not interfere with his capacity to observe and report what he had seen. Coupled with Horowitz' interpretation of the intelligence test scores achieved by Daniels, the jury might well have concluded that his mental condition was irrelevant in determining his credibility. Defendants were entitled to an opportunity to show the contrary by use of the data he relied upon in whole or in part.

Accordingly, the judgments of the Supreme Court, New York County (SHELDON LEVY, J.), rendered on January 16, 1980 convicting Herman Freshley after a jury trial of robbery in the second degree and sentencing him to an indeterminate term of from 2 to 6 years, and on February 15, 1980 convicting defendant Charles Acklin after a jury

trial of robbery in the second degree and sentencing him as a second felony offender to an indeterminate term of 5 to 10 years, should be reversed, on the law, the judgments of conviction set aside, and the cases remanded for a new trial.

MURPHY, P. J., SANDLER, BLOOM and ASCH, JJ., concur.

Judgments, Supreme Court, New York County, rendered January 16, 1980 and February 15, 1980, respectively, unanimously reversed, on the law, the judgments of conviction set aside, and the cases remanded for new trials.