■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES GREGG, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Starkey, J.), rendered March 23, 1981, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. No questions of fact have been raised. This conviction arose out of an incident in which the police recovered a loaded pistol from defendant's pants pocket after stopping him and several other men who were pushing a disabled car filled with merchandise on July 14, 1977, the day following a major power failure in the New York City area. This is the second time this court has been asked to address an issue in this criminal prosecution. By order entered June 30, 1978, the Supreme Court, Kings County (Booth, J.), dismissed the indictment upon the ground that the District Attorney had failed to instruct the Grand Jury on

the defense of temporary innocent possession of a weapon. On appeal by the People, we reinstated the indictment (*People v Gregg,* 89 AD2d 937). At the ensuing trial, the defendant admitted possessing the gun, but claimed he had just found it and was going to turn it over to the police. Accordingly, he sought to interpose the defense of temporary innocent possession. It is undisputed that at the time of his arrest, the defendant had made a statement to the arresting officer concerning his possession of the gun. Before the Grand Jury, the arresting officer testified that when asked where he had obtained the gun, the defendant had merely stated that "I found it", but at the preliminary hearing, the officer had recounted that the defendant had said that "[I] just found it * * * [I don't] know if it would work." At trial, the officer testified that the defendant had stated that "I found it", and that he was carrying it "[f]or protection against looters." The officer declined to acknowledge that he had made the prior inconsistent statement at the preliminary hearing. Obviously, the officer's testimony at trial was entirely inconsistent with the defense of temporary innocent possession, although his testimony before the Grand Jury and at the preliminary hearing was not incompatible therewith. The credibility of the officer in this regard was therefore central to the case. However, when the prosecution refused to stipulate to the accuracy of the transcripts of the prior proceedings, the trial court refused to admit them into evidence for the purpose of impeachment. The jury ultimately returned a verdict convicting the defendant of criminal possession of a weapon in the third degree, and he has appealed from the judgment entered upon that verdict, alleging, *inter alia,* that the court's refusal to admit the transcripts in question into evidence constituted reversible error. We agree, and therefore reverse. Under the facts of the instant case, we believe that the court's ruling improperly restricted the defendant's right to confront the witness against him and impeded his efforts to present a viable defense. The defendant had laid the proper foundation for the introduction of the officer's prior inconsistent statements (see *People v Wise,* 46 NY2d 321). Those statements bore directly upon an issue central to the case, i.e., the defendant's intent in possessing the weapon. Accordingly, the defendant should have been permitted to introduce the prior inconsistent statements into evidence (see *People v Wise, supra; People v Cruz,* 88 AD2d 621; *People v Hill,* 52 AD2d 609; *People v Sepulveda,* 44 AD2d 846). In addition, the trial court exacerbated its error by instructing the jury that "[t]here is no evidence * * * that the [officer's previous] testimony was properly recorded" or that the transcripts employed for the purposes of impeachment were accurate. The People contend that the transcripts were not admissible under any of the known exceptions to the hearsay rule without the testimony of the court reporter who had transcribed them or some other method of authentication. Criminal Term apparently accepted this argument, but we cannot agree. The transcripts at issue were properly certified (cf. CPL 670.20, subd 1). While the better method of authentication would have been to have the court reporter who transcribed them testify as to their authenticity, the foregoing was impossible in this case because the reporter was bedridden. This court has held, however, that even in the absence of the testimony of the court reporter, the mere act of turning over a copy of the minutes to the defendant can constitute a sufficient act of validation by the People to render the transcript admissible (see *People v Sepulveda,* 44 AD2d 846, *supra*). In this case the transcripts were not only turned over to the defendant, but were also submitted to this court *by the People* on their prior appeal. The People thereby attested to the accuracy of the transcripts, which renders their subsequent refusal at trial to stipulate to their accuracy all the more curious. The trial court should have admitted the transcripts on these facts alone. As we are not

prepared to say on this record that the error was harmless, a new trial is required. We have considered the defendant's remaining contentions and find them to be without merit. Mangano, J. P., Gibbons, Gulotta and Thompson, JJ., concur.