THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD DAVIS, Appellant. [639 NYS2d 350]

According to the complaining witness's testimony, as he was painting the molding around his apartment door while talking to defendant, $500 in collected rent money fell out of his pocket. After he replaced the money, he was struck on the head from behind with "something heavy." At the time of the attack, which took place on the second floor of a three-story building, part of which was used as a church, defendant and the complainant were the only ones present. Shortly thereafter, a friend, who had introduced defendant to the complaining witness several weeks earlier, ran into defendant on the street, near the scene of the crime. Defendant told his friend that he had rung the bell to the complainant's building but could not gain admittance. The friend continued along the block and arrived at the building, noticing that the front door was open. He

went upstairs and saw the injured complainant being helped by an upstairs neighbor.

The complainant, who suffered three large head lacerations and a compound fracture of the head, had no recollection of what transpired until he woke up in the hospital. The $500 was missing. During a three to four-hour "lifesaving" operation, bone had to be removed from his brain and wired back to its original position. Since some 20 to 40% of his occipital lobe was no longer functional, it had to be removed. After the operation, the complainant manifested symptoms of both anterograde and retrograde amnesia.* He was, however, able, one day after the incident, to name defendant as his attacker. He had regained part of his memory and the retrograde amnesia "had pretty much cleared" at the time of his discharge from the hospital. After his hospitalization, the victim underwent physical, speech and occupational therapy—which he was still undergoing at the time of trial—at a hospital in Minnesota. He sustained a host of disabling injuries, including an inability in both eyes to see his right side, the loss of full range of motion in his right arm and the ability to walk without braces on his right leg.

The complaining witness's testimony, taken eight days after the incident, was presented to the Grand Jury by videotape. At trial, however, he denied ever having spoken to the prosecutor or even having met her at the time. He also denied ever having told the police that defendant was his assailant. There were other inconsistencies, as well, which, while seemingly innocuous, might have been the result of the complaining witness's original amnesia and a tendency, diagnosed at the hospital in Minnesota, to fabricate details which he could not recall. When the neurosurgeon who operated on the complainant was asked, on cross-examination, to define "confabulatory tendency" he explained that "when some patients cannot remember things, cannot remember small details, they may try to make the interviewer happy by trying to make up some of these things." An objection was sustained to defense counsel's question, "[I]f the [complaining witness] was not able to remember specific facts or something like that, he would try to get a better grade by making up facts?" on the ground that it was not based on record evidence. When defense counsel offered the Minnesota hospital diagnosis of the complaining witness's "confabulatory tendencies", which the testifying neu-

---

* Anterograde amnesia is a loss of memory for events which occur after a traumatic event. Retrograde amnesia is a loss of memory for events which occur prior to a traumatic event.

rosurgeon had reviewed, the court refused to admit it on the grounds that it was prepared by a non-physician, a psychologist, and that the information therein was subjective. Defense counsel ceased his questioning on this subject at this point.

The refusal to admit the Minnesota hospital record, which related to the diagnosis and treatment of the complaining witness, was error. Medical records pertaining to the diagnosis and treatment of a patient are admissible. (*People v Kohlmeyer*, 284 NY 366, 369.) That the author of the information was a psychologist and not a physician was not a proper basis to exclude the hospital record. (*Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G.*, 59 NY2d 137, 140.) Nor was there ever any objection on the ground of failure to lay a proper foundation. Contrary to the People's argument, a fair reading of the extensive colloquy between defense counsel and the court reveals that counsel did attempt to offer the document in evidence and the court did, in fact, rule on its admissibility. Given this error on an evidentiary ruling and the resultant preclusion of a vital area of cross-examination, a new trial is required. In this essentially one witness case, defense counsel should have been afforded the opportunity to demonstrate that the complaining witness "had a mental [disability] which may have affected his ability to perceive, recall and relate events accurately." (*People v Freshley*, 87 AD2d 104, 111-112; *see, People v Dudley*, 167 AD2d 317.) The jury should have been permitted to determine the extent to which the complaining witness's confabulatory tendencies, if any, affected his credibility (*see, People v Demata*, 197 AD2d 371, *lv denied* 82 NY2d 893). Concur—Sullivan, J. P., Ellerin, Nardelli and Williams, JJ.