[733 NYS2d 704]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN BARANEK, Appellant.

Second Department, December 3, 2001

## APPEARANCES OF COUNSEL

*Lynn W. L. Fahey,* New York City (*Reyna E. Marder* of counsel), for appellant.

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens (*John M. Castellano, Nicoletta J. Cafferi* and *Ellen C. Abbot* of counsel), for respondent.

## OPINION OF THE COURT

H. MILLER, J.

The defendant was convicted of, *inter alia,* two counts of

burglary in the first degree and one count of robbery in the first degree arising out of three alleged encounters with the complainant, a woman with a 20-year psychiatric history. The issue presented on this appeal is whether the defendant was denied his right to confront witnesses and present a defense because he was not permitted to cross-examine the complainant about her psychiatric history, introduce the complainant's psychiatric records, or call his expert to testify about her condition. We conclude that the defendant was denied a fair trial under the circumstances of this case.

I

Prior to trial, a hearing was held to determine whether the 44-year-old complainant was competent to testify. The defense presented the testimony of Dr. Robert Berger, a forensic psychiatrist who concluded that the complainant was not competent to testify based upon his review of her psychiatric records. Dr. Berger noted that the complainant had a history of multiple psychiatric hospitalizations dating back to 1977, including her most recent admission to Elmhurst Hospital in October 1994, approximately one year before the incident. The Elmhurst Hospital records included the following notation made during a mental status exam in November 1994: "Persecutory delusions. People break into my house." The Elmhurst Hospital records indicated that the complainant "intermittently experiences auditory hallucinations and appears to be talking to inanimate objects; that she develops heightened suspiciousness of her environment whereby she feels that she is being monitored." The hearing court (Rosenzweig, J.) ruled that the complainant was competent to testify, but noted that the defense would not be precluded from cross-examining the complainant about her psychiatric condition and history "in order to help the jury decide whether her testimony is accurate or delusional."

At trial, held before a different judge, the complainant testified about the three incidents which allegedly occurred in December 1995 and January 1996. The complainant stated that on December 16, 1995, at 1:40 A.M., she was in the bedroom of her one-family home when "all of a sudden" the defendant appeared in her living room. The complainant asked the defendant why he was there and "who sent him." The complainant sat down in the living room "trying to get answers" and the defendant told her "he had no place to go, it was cold outside, [and] could he stay and sleep there." The complainant left the house to call the police from a pay phone

and observed the defendant walking down the street while she was on the phone.

The complainant testified that the defendant returned to her home on December 26, 1995. At approximately 3:00 P.M., the complainant heard a knock on the door and opened it slightly, leaving the chain lock attached. The complainant observed that it was the defendant and asked him what he was doing there. The defendant responded "wrong house." He then tore at the curtain and the wooden panel on the door, loosened it, and left.

The third incident allegedly occurred on January 1, 1996. At approximately 1:00 A.M., the complainant was in the living room when she saw the defendant in her bedroom coming toward her. The complainant asked him why he was there and how he had gotten in. The defendant tore the phone out of the wall, asked the complainant where she kept her money, and then left the house with her pocketbook. The complainant chased after him, and at her direction, two valet parking attendants in the area grabbed the defendant and detained him until the police arrived. It should be noted, however, that the parking attendant who observed the "chase" testified that the complainant was running in front of the defendant, who was walking about 20 or 25 feet behind her.

Prior to the complainant's testimony, the defense counsel sought a ruling on the permissible scope of cross-examination regarding her psychiatric history. The defense counsel argued that the complainant's psychiatric condition was relevant to the case since the defense theory was that the complainant suffered from paranoia and was chronically delusional. The trial court ruled that the complainant's medical condition one year prior to the time of the alleged crimes was "no evidence that she had this condition at the time of the incident." The trial court also ruled that the 1994 psychiatric records which the defense had subpoenaed from Elmhurst Hospital were "irrelevant unless they have to do at [sic] the time of the incident."

During cross-examination, the trial court sustained objections when the defense counsel attempted to ask the complainant whether she (1) had ever been treated for a psychiatric illness, (2) had ever been a patient at Creedmoor Psychiatric Hospital, and (3) was committed to Elmhurst Hospital on October 14, 1994. The trial court then denied the defense counsel's application to introduce the complainant's psychiatric records from Elmhurst Hospital on the ground that a proper foundation had not been laid.

After the People rested, the defense informed the court that it intended to call Dr. Berger as a witness to testify that the complainant's testimony was unreliable. The trial court denied the request, ruling that the reliability of the complainant's testimony was a jury question.

On appeal, the defendant contends that he was denied his right to confront the witnesses against him because he was not permitted to cross-examine the complainant about her psychiatric history. He also claims that the trial court erred in precluding him from introducing any of the complainant's psychiatric records and calling Dr. Berger to testify about her condition. We agree that the defendant is entitled to a new trial because of the cumulative effect of these errors.

## II

Preliminarily, while the People are correct that the defendant did not properly preserve all of the claims under review (*see*, CPL 470.05 [2]; *People v Gray*, 86 NY2d 10; *People v Udzinski*, 146 AD2d 245), we conclude that appellate review is warranted as a matter of discretion in the exercise of our interest of justice jurisdiction (*see*, CPL 470.15 [6] [a]; *People v Badillo*, 218 AD2d 811).

## III

■ The right of an accused to confront the witnesses against him or her through cross-examination is a fundamental right of constitutional dimension (US Const 6th, 14th Amends; NY Const, art I, § 6; *Davis v Alaska*, 415 US 308; *Douglas v Alabama*, 380 US 415; *Pointer v Texas*, 380 US 400; *People v Parker*, 57 NY2d 136, 139). The right of cross-examination is an essential safeguard of fact-finding accuracy and "the principal means by which the believability of a witness and the truth of his testimony are tested" (*Davis v Alaska, supra,* at 316). While the scope of cross-examination generally rests within the trial court's discretion (*see, Martin v Alabama 84 Truck Rental,* 47 NY2d 721; *People v Schwartzman,* 24 NY2d 241, *cert denied* 396 US 846; *People v Roussopoulos,* 261 AD2d 559), in this case, the trial court improvidently exercised its discretion in precluding the defense from cross-examining the complainant about her psychiatric history.

Where a primary prosecution witness is shown to suffer from a psychiatric condition, the defense is entitled to show that the witness's capacity to perceive and recall events was impaired by that condition (*see, People v Rensing,* 14 NY2d 210; *United*

*States v Lindstrom,* 698 F2d 1154; *People v Arnold,* 177 AD2d 633; *People v Dudley,* 167 AD2d 317, 318; *People v Knowell,* 127 AD2d 794, 795; *People v Gregg,* 90 AD2d 812; *People v Freshley,* 87 AD2d 104, 111-112). In *Rensing,* the Court of Appeals ordered a new trial based upon newly-discovered evidence that a witness who had implicated the defendant had a history of mental illness. In directing a new trial, the Court of Appeals reasoned that the jury should have been made aware that the witness had been diagnosed with paranoid schizophrenia, suffered from visual and auditory hallucinations, and had been discharged from a psychiatric hospital against medical advice 12 years before the crime (*see, People v Rensing, supra,* at 214).

Here, too, the jury should have been made aware of the complainant's psychiatric history to assist them in assessing the reliability of her testimony and determining whether her account of the three incidents was accurate or delusional. The complainant's psychiatric condition was relevant to her capacity to perceive and recall the events which allegedly occurred in December 1995 and January 1996 (*see, People v Rensing, supra; People v Freshley, supra,* at 111-112; *People v Dudley, supra*). In light of the chronic nature of the complainant's condition, the trial court erred in ruling that her condition one year prior to the incident was irrelevant. The complainant's psychiatric history dated back to 1977, with multiple hospitalizations including involuntary confinement to a psychiatric hospital one year before the incident. Notably, during her most recent hospitalization, the complainant suffered from auditory hallucinations and delusions that people were breaking into her home. The defense should have been permitted to question the complainant about these delusions since he was charged with breaking into her home. The trial court's restriction on the scope of cross-examination was fundamentally unfair, particularly since the People's case was based almost entirely upon the complainant's eyewitness testimony.

The People assert that any error in limiting the scope of the complainant's cross-examination is harmless because the defendant was permitted to elicit some testimony about her condition and challenge her credibility in other respects. We disagree. Although the defense was permitted to elicit testimony that the complainant had a case worker assigned to her from Adult Protective Services at the time of the incident and saw a therapist "from time to time," no testimony was elicited regarding the nature of her psychiatric condition. The severe

restrictions placed by the trial court on the complainant's cross-examination prevented the defense from presenting its theory of the case to the jury (*cf., People v Sobers,* 272 AD2d 418; *People v Simmons,* 237 AD2d 313, 314, *lv denied* 89 NY2d 1100, *cert denied* — US —, 121 S Ct 1614; *People v Chestnut,* 237 AD2d 528).

## IV

■ We also assign error to the trial court's denial of the defendant's application to introduce into evidence some of the complainant's psychiatric records from Elmhurst Hospital (*see,* CPLR 4518; *People v Davis,* 225 AD2d 449, 451). While the trial court denied the application on the ground that no proper foundation was laid, the defense counsel was precluded from laying a proper foundation since the trial court sustained objections to the defense counsel's inquiries about whether the complainant had ever received psychiatric treatment or been hospitalized at Elmhurst Hospital. As noted above, the complainant's Elmhurst Hospital records reflected that she suffered from delusions that people were breaking into her home in November 1994. These records were relevant to the issue of whether the complainant's capacity to perceive and recall the events in December 1995 and January 1996 was impaired by her mental condition (*see, People v Davis, supra*). At minimum, the defense counsel should have been permitted to impeach the complainant with the hospital records during cross-examination (*see, People v Baier,* 73 AD2d 649).

## V

■ The trial court also erred in precluding the defense from offering expert testimony regarding the complainant's psychiatric condition (*see, People v Parks,* 41 NY2d 36; *People v Dudley, supra*). While the resolution of whether the complainant was competent to testify under oath was the trial court's exclusive responsibility, the determination of the complainant's credibility and the weight to be given her testimony was the province of the jury (*see, People v Parks, supra; People v Dudley, supra,* at 319; *People v Freshley, supra*). A defendant's right to be heard includes the right to offer evidence that the infirmity of a crucial witness affects that witness's ability to perceive and recall events (*see, People v Dudley, supra,* at 321; *People v Freshley, supra,* at 111). In this respect, "[t]he testimony of specialists or others with particular knowledge of the witness'[s] mental or physical condition may provide invaluable assistance to the jury" (*People v Parks, supra,* at

47). Expert testimony would have "provide[d] the jury with an objective analytical framework for evaluat[ing] of [her] testimony" (*People v Parks, supra,* at 48; *see also, People v Baier, supra,* at 650). In this essentially one-witness case, the defendant should have been permitted to offer expert testimony to explain the complainant's psychiatric condition and treatment as well as the effect, if any, they may have had upon her capacity at the time of the incident (*see, People v Dudley, supra*).

## VI

We conclude that the defendant was denied a fair trial by the cumulative effect of the foregoing errors. These errors cannot be deemed harmless under the circumstances of this case (*see, People v Crimmins,* 36 NY2d 230). Accordingly, we reverse the judgment as a matter of discretion in the interest of justice and grant the defendant a new trial.

SANTUCCI, J. P., FLORIO and SCHMIDT, JJ., concur.

Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.