People v Gertz (2022 NY Slip Op 02457)

People v Gertz

2022 NY Slip Op 02457

Decided on April 14, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 14, 2022

111618
[*1]The People of the State of New York, Respondent,
v
Christopher Gertz Jr., Appellant.

Calendar Date:February 15, 2022

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and Fisher, JJ.

Matthew C. Hug, Albany, for appellant.
David J. Clegg, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered February 21, 2019, upon a verdict convicting defendant of the crime of sexual abuse in the first degree.
In December 2017, defendant was charged in a four-count indictment with two counts of sexual abuse in the first degree (counts 1 and 2), one count of assault in the second degree (count 3) and one count of assault in the third degree (count 4). The two counts of sexual abuse in the first degree stem from allegations that defendant subjected the victim to sexual contact. Prior to trial, defendant moved to dismiss counts 1 and 2 of the indictment as duplicitous, sever counts 3 and 4 as not properly joinable (see CPL 200.20) and dismiss the indictment in its entirety due to the joint presentation of the separate charges. County Court dismissed count 2 as duplicitous, severed counts 3 and 4 and denied the remainder of defendant's motion.[FN1] Following a jury trial, defendant was convicted of sexual abuse in the first degree as charged in count 1. County Court thereafter determined that defendant was a persistent felony offender and sentenced him to a prison term of 15 years to life. Defendant appeals.
Initially, defendant contends that his conviction is not supported by legally sufficient evidence and is against the weight of the evidence. However, defendant's "legal sufficiency claim is unpreserved because his general motion for a trial order of dismissal did not include arguments directed at specific deficiencies in the proof" (People v Youngs, 175 AD3d 1604, 1606 [2019]; see People v Hawkins, 11 NY3d 484, 492 [2008]). "Nevertheless, in reviewing defendant's challenge to the weight of the evidence, we necessarily determine whether all of the elements of the charged crime[] were proven beyond a reasonable doubt" (People v Barzee, 190 AD3d 1016, 1017 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Harris, 186 AD3d 907, 908 [2020], lv denied 36 NY3d 1120 [2021]). "In conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d at 1017-1018 [internal quotation marks and citations omitted]; see People v Brisman, 200 AD3d 1219, 1219 [2021], lv denied 37 NY3d 1159 [2022]). As relevant here, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [13] years old and the actor is [21] years old or older" (Penal Law § 130.65 [4]).
At trial, the People produced testimony from, among others, the victim, the victim's mother (hereinafter the mother), an [*2]investigator with the Ulster County Family and Child Advocacy Center and a State Police forensic scientist. The victim described where the sexual contact took place, what she was wearing and the manner of the sexual contact, including that defendant unbuckled her pants, unzipped her zipper, pulled her pants down and touched her vagina and breasts. The victim also testified that defendant took a picture of her using his cell phone and that, although her eyes were closed, she saw a flash and heard a click. The mother described the manner in which the victim disclosed the sexual contact to her the next morning and how the victim responded to defendant after the mother confronted him with the allegations.
The child advocacy center investigator testified that he was unable to immediately locate defendant to obtain his clothes and to collect evidence on his hands, but testified as to how he collected the victim's clothing,[FN2] took photographs of the scene and obtained DNA buccal swabs from the victim and her male siblings. The investigator further testified regarding his efforts to locate defendant and how he subsequently obtained physical custody of defendant and his cell phone [FN3] in Indiana. A State Police forensic scientist testified that she performed serology and DNA analysis on the victim's underwear, pants and the inside of her T-shirt. The analysis conducted on the inside zipper area of the pants and the inside chest area of the
T-shirt yielded results of at least two male donors with major contributors being defendant and his son. The analysis of the buttonhole area and zipper pull-tab area of the victim's pants yielded results of a single-source genealogical DNA profile that matched the DNA profiles of defendant and his son. The analysis of the inside crotch of the underwear yielded results of at least two male donors but was insufficient for any comparisons.
Although the victim's testimony regarding the sexual contact contained some inconsistencies, "this Court has long recognized that it is not uncommon for young children to be uncertain and even inconsistent in their trial testimony" (People v Fournier, 137 AD3d 1318, 1320 [2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 929 [2016]). "Having seen and heard the victim's testimony, which was specific as to the event, and noting that she was cross-examined, we find that the jury was entitled to credit her testimony. This is particularly so given the victim's prompt 'matter of fact' disclosure to her mother, which served to corroborate her testimony" (id. [citation omitted]; see People v Rosario, 17 NY3d 501, 511-513 [2011]; People v Horton, 173 AD3d 1338, 1340 [2019], lv denied 34 NY3d 933 [2019]; People v Madsen, 168 AD3d 1134, 1136-1137 [2019]; People v Hackett, 167 AD3d 1090, 1093 [2018]). Moreover, the victim "was thoroughly cross-examined regarding the inconsistencies in her testimony, and there is nothing in the record before us that rendered [*3]her testimony inherently unbelievable or incredible as a matter of law" (People v Alexander, 160 AD3d 1121, 1123 [2018], lv denied 31 NY3d 1144 [2018]). According deference to the jury's credibility determinations, we find that the verdict is supported by the weight of the evidence (see People v Fournier, 137 AD3d at 1320).
Defendant next contends that County Court deprived him of his right to confront a witness when it limited his cross-examination of the mother regarding her mental illness. "A defendant has the constitutional right to confront witnesses through cross-examination; however, that right is not absolute" (People v Gooley, 156 AD3d 1231, 1232 [2017] [citations omitted], lvs denied 31 NY3d 984, 985 [2018]). "A trial court may impose reasonable limits on a defendant's cross-examination of a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant" (People v Gannon, 174 AD3d 1054, 1060 [2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 980 [2019]). "Whatever the rights of a witness to privacy and freedom from harassment, where the testimony is crucial, the defense should have the right to show that the witness had a mental illness which may have affected his [or her] ability to perceive, recall and relate events accurately" (People v Freshley, 87 AD2d 104, 111-112 [1982] [citations omitted]; see People v Baranek, 287 AD2d 74, 78 [2001]; People v Arnold, 177 AD2d 633, 634-635 [1991], lv denied 79 NY2d 853 [1992]; People v Dudley, 167 AD2d 317, 320-321 [1990]).
Defendant was permitted to question the mother about whether she was experiencing any symptoms related to her mental illness at the time of the incident that could have affected her recollection of the incident and question her regarding the medications that she might have been taking at that time (see People v Gooley, 156 AD3d at 1233). In our view, although County Court imposed certain limitations on the scope of defendant's cross-examination of the mother, defendant was nonetheless permitted to elicit testimony from her regarding whether she had a mental illness that might have affected her ability to perceive, recall and relate the incident in question accurately (see People v Baranek, 287 AD2d at 78; People v Arnold, 177 AD2d at 634-635; People v Dudley, 167 AD2d at 320-321; People v Freshley, 87 AD2d at 111-112). Accordingly, we find that County Court did not abuse its discretion in limiting defendant's cross-examination of the mother.
Defendant further asserts that County Court abused its discretion in denying his request for an adverse inference charge based upon the People's failure to provide the mother's mental health records. "[C]ommon law permits, and sometimes compels, a trial court to instruct the jurors that they may draw an inference unfavorable to the People based upon the government's failure [*4]to present, preserve or disclose certain evidence," and the trial court's decision in this regard will not be reversed absent an abuse of discretion (People v Durant, 26 NY3d 341, 347 [2015]; see People v Shcherenkov, 21 AD3d 651, 652 [2005]). A trial court typically must issue an adverse inference instruction to penalize the People for failing to present certain evidence at trial (see People v Durant, 26 NY3d at 347). Here, the People claim that they were unaware of the mother's mental illness until defendant's cross-examination of her began. Defendant, however, was aware of the mother's mental health issues at least one month prior to trial and did not disclose this information to the People, nor did he seek to obtain any relevant medical records. County Court allowed defendant the option of requesting a continuance or moving for a mistrial, but defendant declined both options. Thereafter, the court obtained and performed an in camera inspection of some of the mother's mental health records and determined that they did not contain any Brady or Giglio material. County Court employed the correct procedure in reviewing whether the mother's mental health records contained information relevant and material to the determination of defendant's guilt or innocence and balancing defendant's interests against the mother's interest in keeping the records confidential (see People v Houze, 177 AD3d 1184, 1187-1188 [2019], lv denied 34 NY3d 1159 [2020]; People v Bowman, 139 AD3d 1251, 1253 [2016], lv denied 28 NY3d 927 [2016]; People v McCray, 102 AD3d 1000, 1005 [2013], affd 23 NY3d 193 [2014]). Moreover, County Court permitted defendant to cross-examine the mother so as to cast doubt upon her credibility as a witness, and there was no reasonable possibility that the information contained in the mother's mental health records would lead to defendant's acquittal. Given the foregoing, we discern no abuse of discretion in County Court's denial of defendant's request for an adverse inference charge (see People v Houze, 177 AD3d at 1187-1188; People v Bowman, 139 AD3d at 1253; People v McCray, 102 AD3d at 1005).
We also reject defendant's contention that the prosecutor's comments during summation amounted to prosecutorial misconduct and deprived him of a fair trial. "Reversal based on prosecutorial misconduct during summation is warranted only if the misconduct is such that the defendant suffered substantial prejudice, resulting in a denial of due process. That determination hinges upon the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (People v Nunes, 168 AD3d 1187, 1193 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 979 [2019]).
Regarding the prosecutor's comments on his role as prosecutor and references to case law, these comments [*5]must be examined in the context of statements made by defense counsel during summation. Viewed in that context, the statement was a fair comment based on defense counsel's reference to zealously representing his client and inferences of improper conduct between the witnesses and the prosecutor (see People v White, 79 AD3d 1460, 1464 [2010], lvs denied 17 NY3d 791, 803 [2011]). As to the prosecutor's comments pertaining to the DNA evidence, these comments were in response to defense counsel's theory of the case that there was no direct evidence connecting defendant's DNA to the victim. Although the prosecutor's comments can be viewed as improper statements of the DNA evidence, we do not find, when viewing the summation as a whole, that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct, nor did he cause substantial prejudice so as to deprive defendant of due process or a fair trial (see People v Sammeth, 190 AD3d 1112, 1118-1119 [2021], lv denied 36 NY3d 1123 [2021]; People v Rivera, 124 AD3d 1070, 1075 [2015], lvs denied 26 NY3d 971 [2015]).
Lastly, we find no error in County Court sentencing defendant as a persistent felony offender. Defendant's criminal history satisfied the statutory definition of a persistent felony offender pursuant to Penal Law § 70.10 (1) (see People v Swartz, 160 AD3d 1296, 1296 [2018]). "Moreover, nothing in the record suggests that County Court abused its discretion by determining that defendant should be sentenced as a persistent felony offender in light of his extensive criminal history and the . . . nature of the crime[] for which he was convicted" (People v Henry, 173 AD3d 1470, 1481 [2019], lv denied 34 NY3d 932 [2019]; see People v Swartz, 160 AD3d at 1296). Nor are we persuaded that the sentence imposed is harsh or excessive given defendant's extensive criminal history, the lack of remorse for this conviction and the impact this crime has had on the young victim (see People v Bombard, 187 AD3d 1417, 1420 [2020]; People v Dickinson, 182 AD3d 783, 790-791 [2020], lv denied 35 NY3d 1065 [2020]).
Garry, P.J., Lynch, Clark and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: County Court also granted the People's cross motion to amend the allegations in count 1.

Footnote 2: The victim's clothing had been previously tossed in a laundry basket at her home, which contained clothing belonging to her siblings.

Footnote 3: The cell phone was retrieved from the water tank of a toilet located at the Indiana residence of defendant's friend.