OPINION OF THE COURT
Sheldon S. Levy, J.
In a criminal prosecution for robbery, can a school psychologist, on the People’s case, give evidence concerning the mental and physical infirmities of the complaining witness, who has been found competent to testify? The answer to this question, and its encompassment of the novel doctrine of "the interested observer,” is one of first impression.
The charge is that on Monday, March 19, 1979, shortly after noon, in the vicinity of 8th Avenue and West 41st Street, *598 Manhattan, the defendants Charles Acklin and Herman Freshley forcibly stole $14 from one Steven Daniels. The complainant happens to be a 20-year-old youth with a severe speech impediment and a history of mild mental retardation. He will be the People’s only witness to the alleged robbery.
Initially, the prosecuting attorney properly secured a physician-patient privilege waiver from the complainant, and candidly informed defense counsel of the witness’ mental and physical problems. The prosecution then obtained diagnostic records containing the results of psychological testing and evaluation of the complainant. These records were made available to this court for in camera inspection for Brady material. This procedure, of course, constitutes a minimal good faith requirement if, in fact, copies of such records are not immediately and voluntarily turned over to the defense— a better and more expeditious practice. A defendant is clearly entitled to discovery and inspection of the psychiatric, psychological and medical records of a complaining witness which contain information which may have some bearing on the witness’ credibility and on his ability to perceive the events in issue; to remember such happenings; and to recount the facts concerning same (see People v Lowe, 96 Misc 2d 33, and cases cited therein). Obviously, "[t]he People may not in any criminal case withhold evidence which could conceivably disprove or tend to disprove the defendant’s guilt” (People v Preston, 13 Misc 2d 802, 814). Moreover, hospital records containing a history of a witness’ mental illness, confinement and treatment may even be admitted as evidence-in-chief as an aid to jury assessment of the credibility of that witness (see People v Rensing, 14 NY2d 210; People v Maynard, 80 Misc 2d 279).
Following such judicial perusal, the court, in the interests of complete fairness and justice, directed that the District Attorney provide copies of all of said records, except those dating back some 10 years (and with the home address of the complaining witness redacted) to counsel for each defendant.
Thereafter, as to the defendant Freshley, the People called the complainant, Steven Daniels, as a witness in a previously directed identification suppression hearing. Prior to his being sworn, however, upon defendant Freshley’s request, the court interrogated the young man and found him competent to testify. In connection with this inquiry as to competency, no party offered any other witnesses. Although Steven Daniels suffers from a severe speech impediment, in addition to his *599 mild mental infirmity, he was able to be questioned fully and fairly at the hearing on both direct and cross-examination.
Now, at the conclusion of the Wade hearing (defendant Freshley’s application having been denied) and upon the commencement of jury selection, in order to question prospective jurors in a proper fashion, the Assistant District Attorney presently reveals his proposed intention to call as a People’s witness on his direct case, Gil Horowitz, a school psychologist attached to the Bureau of Child Guidance of the New York City Board of Education, who has worked with and has psychologically tested the complaining witness during the past year. The case of People v Parks (41 NY2d 36), wherein a teacher of the mentally retarded complainant in a rape case was permitted to testify at trial concerning the mental condition of the complainant, is cited in support of this procedure.
Upon the court’s direction for an offer of proof with respect to the testimony of the psychologist, the People submit a detailed outline of anticipated questions which make clear the intention of the prosecution to treat this witness as an expert. Not only will the qualifications of the witness and his objective knowledge of the complainant be sought, but also details of other children at the Child Guidance Center; how they all are tested and evaluated; the results of the complainant’s tests; his diagnosis; the witness’ interpretation of the diagnosis and his definitions of all terms used; the complainant’s work record; and opinions concerning the complainant’s ability to work and his "sight, hearing, smell, touch and conceptualization.”
In response, the defendants object vigorously to the use of the psychologist as a witness at all; complain, in all events, of the breadth of the proposed testimony; and request copies of all of the individual tests administered to the complainant and a continuance so that a defense psychologist can examine, test and evaluate the complainant.
Although the suggestions of the People, as to areas of permissible inquiry with the school psychologist are entirely too broad, the opposition of the defense to even limited questioning is also without merit, as is their demand for further records and pretrial mental examination and testing of the complainant. This is especially so in view of the confined nature of the testimony that will be allowed hereafter by this court and the discovery of records already afforded.
The circumscribed, preliminary evidence of the school psy *600 chologist is not only warranted, but is desirable. Too often, counsel and even the court, assume that the jury knows as much about a prospective witness as they do. The jury, however, is not privy to information garnered by the trial participants through discovery procedures, preliminary hearings or frank off-the-record discussions and will surely be in the dark about any mental or physical problems that a witness may have in testifying until he actually takes the stand. At that point, unfortunately, the jury will not have had the advantage of the "common” knowledge concerning the infirmities of the witness, which surely could be of material assistance to them in assessing and evaluating the testimony of such a witness.
It is, accordingly, a matter of legal and practical necessity that the jury be equally and fully apprised of any particular mental or physical deficiency of a witness. This is of even greater significance where, as here, more than one type of handicap is present, or where the witness’ appearance or conduct (not applicable here) may belie or mask the physical or mental involvement (People v Rensing, 14 NY2d 210, supra; People v Maynard, 80 Misc 2d 279, supra).
In the instant matter, the complaining witness has an obvious and severe speech impediment, and the content and manner of his responses will probably reveal a less than normal intelligence. Nevertheless, the jury is equally entitled —as are counsel and the court — to the benefit of the observations of Gil Horowitz, the school psychologist, who has worked with the complainant for the past year, before listening to the witness himself and attempting to decide the credit and weight to be afforded to his testimony.
Even the mother of a mentally retarded complaining witness in a rape case has been permitted to give limited testimony concerning her daughter’s mental infirmity (People v Riss, 58 AD2d 697).
In setting forth the conditions under which this type of testimony may normally be elicited and its allowable scope, the court perforce has freshly formulated the doctrine of "the interested observer”. Where a prime witness is so mentally or physically incapacitated that his ability to testify is resultantly impeded, a person who has demonstrated a past interest in the health, education or general welfare of the said witness and who also has actually observed the witness for a reasonable period of time, may testify objectively — as an aid to jury understanding — concerning the condition of the witness *601 and the naure of the infirmity involved. Such a witness may be a psychologist, a psychiatrist, a physician, a teacher, a parent or any other lay or professional person who fits these prerequisities.
"Once it has been established to the satisfaction of the trial court that a witness who is about to testify or has testified suffers from a material physical or mental infirmity which affects his or her ability to communicate on the witness stand, the trial court, in a discretion to be exercised with reasonable restraint, may admit evidence which will assist the jury in evaluating the testimony of that witness from another person personally familiar with the infirmity or professionally qualified to testify with respect thereto” (People v Parks, 41 NY2d 36, 47, supra). Nor should any distinction be made as to the type of litigation — civil or criminal — involved. Moreover, in a criminal case, there is no discernible difference whether the witness is offered by the prosecution or by the defense.
The interested observer witness should be allowed to testify briefly as to his background, qualifications and present employment, if any; his past professional or personal contacts with and knowledge of the impaired witness; the nature and degree of the impairment, including the condition of the witness based upon direct observation; scientific and objective data, including mental development age, intelligence test quotient and functioning grade level of the handicapped witness; the infirm witness’ work record if any; and observable societal and personality traits of the impaired.
The interested observer should not be permitted, "in any way, shape or form” to give his opinion as to the credibility or degree of confidence, or lack thereof, to be accorded to the infirm witness. As our highest State court succinctly reiterated in the Parks case, "we do not suggest, or even intimate, that an expert may ever pass his own judgment on a witness’ credibility and impart that judgment to the jury. Such testimony would be a serious usurpation of the jury’s prerogative and responsibility” (People v Parks, supra, p 48; but cf., the rare exception, United States v Hiss, 88 F Supp 559).
Moreover, the said witness may not give his conclusions or opinions concerning, or even characterize, how the infirmity of the impaired witness may affect any of his senses or his ability to perceive, to recall or to recount, since this type of evidence would constitute close infringement upon the jury’s province of determining whether particular testimony should *602 be credited at all. Instead, the objective evidence to be elicited will be employed primarily to alert the jury to the nature of the subject witness’ condition and to provide a framework in which the witness’ testimony and behavior on the stand may be fairly and informatively considered and weighed.
In fact, the witness Gil Horowitz, although an expert in psychology will, in reality, not be testifying as an expert at all, but merely as an interested observer. Accordingly, at the conclusion of his testimony, and again at the end of the case, the standard "expert witness” charge as to expressed expert opinion cannot be employed. Instead, this court will use the following charge, which has been drafted anew:
"As to the witness Gil Horowitz, although he gave testimony concerning his qualifications as an expert in the field of psychology, he was not allowed to give any opinion, expert or other, with respect to any matter concerning the credibility of the witness Steven Daniels. The testimony of Gil Horowitz was limited by the court primarily to his contact with and direct observations of Steven Daniels and was permitted as a possible aid to the jury in its assessment and evaluation of the testimony of Steven Daniels as to the nature and degree of his mental and physical infirmities as they may affect his ability to communicate on the witness stand. However, the weight and credibility of the testimony of Gil Horowitz, as well as of all other witnesses, is solely for your determination. The testimony of this witness with respect to his observations is subject to the same rules concerning reliability as that of any other witness.”
In addition, however, before any proof by an interested observer will ultimately be admitted at all, the evidence of the impaired witness must also meet certain specified criteria.
First, the handicapped witness must be found legally competent to testify. (This finding, which must be made by the court as a matter of law, preferably should be accomplished before the subject witness testifies at all and out of the the presence of the jury.) Second, the impaired witness must actually testify thereafter or have already testified. Third, the testimony of the impaired witness must be crucial to the case, such as a complaining witness, an eyewitness, an alibi witness or a key witness of any kind. Fourth, the ability of the disadvantaged witness to testify must actually be in issue, so that the testimony of the interested observer cannot be employed merely as a bolstering device. And fifth, the testimony *603 of the infirm witness must be otherwise admissible under recognized rules of evidence.
Where these criteria have been or will be met, it would appear to be the more practical and expeditious course to have the interested observer give evidence prior to the time that the impaired witness takes the stand. This procedure will permit the jury to be fully familiar with and cognizant of the nature and degree of the impairment and to assess properly thereafter the entire testimony of the subject witness.
It is only where the disability is discovered after the testimony of a key witness, or where it obviously has affected the ability of the witness on the stand to impart crucial information to the jury, that an interested observer should be permitted to testify thereafter concerning direct knowledge and observations of the mental or physical infirmity of the witness.
However, whether testifying before or after the infirm witness, the evidence of the interested observer should and must be strictly limited and controlled, as previously set forth.
Accordingly, although as stated, the defendants here have advanced a plethora of arguments against allowing any testimony of this nature at all, none of their contentions would appear meritorious.
The specific claims of the defendants are that the admission of the evidence of the interested observer will be an improper bolstering, a usurping of jury functions, an equivalence to the calling of a character witness, a deprivation of due process with respect to rights of confrontation, an act without legal justification, and an abuse of discretion. These assertions may be answered seriatim.
Since the interested observer will only be testifying as to particular facts concerning the impaired witness and his impairment, as he knows them or has observed them himself, and will not be giving any opinions or subjective impressions as an expert at all, it cannot be said that the interested observer will be bolstering the character or credibility of the infirm witness, "independent testimony with respect to a witness’ faculties is designed to provide the jury with an objective analytical framework for evaluation of the witness’ testimony” (People v Parks, supra, p 48). Accordingly, there will be no usurping of jury functions in any manner, and the jury will surely "have the last word” as to the credibility and reliability of the complaining witness.
*604 Moreover, although expert testimony, as well as the evidence of any other competent witness, is admissible on the issue of a witness’ competence to testify (Matter of Brown v Ristich, 36 NY2d 183; Aguilar v State of New York, 279 App Div 103), where there is no issue, or no remaining issue, of competence but only one of credibility, no expert testimony may be permitted as to the character of the complainant, at least until that character is affirmatively attacked. Certainly, the proffered evidence of the interested observer cannot constitute character testimony in the usual evidentiary sense. No one will be requesting a community opinion of the infirm witness’ character. Nor will the interested observer be permitted to give any proof with respect to discussions concerning the witness’ reputation for truth and veracity.
Furthermore, the permissible scope of cross-examination of the interested observer is well within the discretion of the trial court during the course of actual testimony and can be broadened, as warranted, to include matters not strictly encompassed by the direct examination. In this regard, the defense already has been provided with various psychological reports of Gil Horowitz, the proposed interested observer witness, and will be able to confront him — if deemed necessary — in adequate fashion. Nevertheless, normally, there would appear to be little or no advantage to be gained by any opposing party by a vigorous or extended cross-examination of such an interested observer, who has been summoned merely as an aid to the jury in its evaluation of a physically or mentally impeded witness.
Finally, the defendants attempt to distinguish the analogous authority of the Parks case, which clearly provides both legal and discretionary support for the doctrine of the interested observer and for the limited prospective testimony here involved. Defendants point to the fact that in Parks there was some corroboration for the evidence of the mentally retarded complainant, while such corroborative proof will be absent here. However, the ultimate credibility of the complaining witness in Parks was as important an issue for jury determination there as it will be in this case. The credibility and weight of such testimony is the very subject about which the interested observer will not be permitted to testify. Accordingly, Parks is "alive and well” and is not distinguishable in this regard.
 As to defendants’ oral cross motion for the individual, *605 psychological testing records of the complainant and for a psychological examination of that witness by a defense psychologist, there appears no present legal, equitable or practical warrant for any of such requested relief. The psychological records and reports supplied to the defendants initially will be more than sufficient for cross-examination purposes, especially since the defendants also will be barred, as a form of jury infringement, from eliciting opinions or conclusions from the interested observer as to the credibility of the infirm witness.
In addition, while there is some authority in this State for the proposition that a court, even sua sponte, has the power to direct the psychiatric or psychological examination of a witness (see People v Lowe, 96 Misc 2d 33, 38-39, supra), such power, even if it actually exists in contravention of a witness’ basic rights to privacy and to freedom from harassment, has never been judicially exercised in this jurisdiction merely upon the application of an opposing party. Certainly, before any court would ever consider such an unusual order, a clear and substantial demonstration of necessity and justification would have to be plainly made. Not only has no such showing been accomplished, or even attempted here, but the directed turnover to the defendants of all pertinent psychological records of Steven Daniels for cross-examination purposes would appear to obviate completely the necessity or warrant for any special psychological examinations of that witness by the defense.
On the other hand, the People’s request for extensive and extended direct examination of the interested observer smacks of an unabashed attempt to usurp an obvious jury function with respect to a physically or mentally disabled witness and would be equally legally untenable.
Although on oral argument, the Assistant District Attorney agreed that the psychologist, Gil Horowitz, could not invade the area of jury credibility test, he pressed for the position that the witness should be permitted to give his opinion as to the "capacity” of the complainant, Steven Daniels, to perceive, to recall, to recount and to perform certain tasks. In my view, however, such testimony, even if given by an expert qualified to render this type of opinion, would constitute a clear invasion of jury prerogative. For example, a witness’ ability to see does not mean that he has observed on the occasion in issue and does not provide a firm base to determine what the witness saw or how he perceived at any particular time.
*606 Therefore, I must emphasize again the restrictive nature of the questions to be directed to the interested observer. In using — but, I trust, not abusing — permissible discretion in this regard, the court is not unmindful of the broad dicta of the Parks decision with reference to the allowable evidence of expert witnesses. Nevertheless, when taking a sail upon proverbial unchartered waters, care should be taken "not to fall overboard”. If this court’s approach to the problem of the handicapped witness and the interested observer is considered a display of an overabundance of caution, the charge is freely admitted.
Although our highest court has condoned — and even encouraged — an expanded use of expert testimony to explain a witness’ impairment, since expert proof is usually an expression of opinion, I would continue to veer away from the admission of any testimony which would tend towards an imposition upon the jury’s fact-finding and truth-finding functions.
Nevertheless, in conclusion, let it be plainly understood that the mentally deficient and the physically handicapped in our society are neither second class citizens nor should they be treated as such. They already have sufficient problems of their own without imposing upon them a variety of legal impediments and evidentiary rules, which will make it even more difficult for them to testify as witnesses in contested litigation. "[TJhose incapable of eloquent expression and abstract thought * * * also deserve a fair hearing” (Matter of Brown v Ristich, 36 NY2d 183, 192, supra).
Moreover, the courts correctly have been particularly diligent in efforts to protect the rights of mentally defective and physically disabled defendants in criminal cases (see Jackson v Indiana, 406 US 715). The rights of similarly disadvantaged complainants should be guarded no less carefully.
The motion of the People is granted to the extent of permitting the school psychologist to testify on the prosecution’s case in the limited fashion indicated.
The cross application of the defendants for further discovery of psychological records, for psychological testing and examination of the complaining witness and for a continuance is, in all respects, denied.