v.

**SUPERIOR COURT, Respondent.**

No. A–11049.

Court of Appeals of Alaska.

Dec. 14, 2012.

Shaun M. Sehl and Victor Kester, Office of Victims' Rights, Anchorage, for the Petitioner.

Hanley R. Smith, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Real Party in Interest, David Standifer.

Allen M. Bailey, Anchorage, for Amicus Curiae National Crime Victim Law Institute.

No separate appearance for the Superior Court.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

David Standifer is facing charges of sexual assault, attempted sexual assault, and physical assault, based on allegations that he attacked a woman named N.G.

It appears that N.G. has a history of alcoholism, and there is at least some indication that she was previously diagnosed as suffering from a mental illness. Based on this, the superior court has issued an order that requires N.G. to identify everyone who has provided health care to her during the past twenty years, and that requires N.G. to sign a release so that the court can issue subpoenas to all of these health care providers, directing them to produce their records for the court's *in camera* inspection. The court intends to examine these records to determine whether they contain non-privileged information, and to determine whether this information is relevant to N.G.'s "ability to accurately perceive or truthfully report [the] events" at issue in this case. If so, the court intends to disclose this information to Standifer's defense team.

As we explain in this opinion, we conclude that the superior court's order is premised on a mistakenly narrow interpretation of the psychotherapist-patient privilege. We further conclude that the superior court's order is inconsistent with Alaska law governing the circumstances in which a court has the authority to order disclosure of a victim's or witness's privileged psychotherapy records. We therefore reverse the superior court's order.

### Underlying facts

As explained at the beginning of this opinion, David Standifer stands charged with sexual assault, attempted sexual assault, and physical assault, based on allegations that he attacked N.G. According to the State's evidence, the attack took place in an isolated area near downtown Anchorage. N.G. managed to escape and run away to a more public place; a passerby observed N.G. after she collapsed on a roadway, bleeding and naked from the waist down. The police were summoned, and N.G. was taken to a medical facility for a sexual assault examination. A few days later, N.G. sought follow-up medical care. At that time, she was seen by two physicians.

The case notes prepared by the sexual assault examiner, as well as the case notes prepared later by the two physicians, refer to N.G.'s history of treatment for alcohol abuse and alcohol withdrawal. In addition, one of the physicians' case notes mentions that N.G. "[has] a history of bipolar disorder".

Following Standifer's indictment, Standifer's attorney asked the superior court to order production of "any and all medical, alcohol treatment[, and] psychiatric records concerning N.G.". The State opposed this motion, as did N.G. herself. (N.G. appeared independently for this purpose, represented by the Office of Victims' Rights.)

With regard to the request for disclosure of N.G.'s history of alcohol treatment, Standifer's attorney noted that the case notes (described above) referred to N.G.'s history of alcohol treatment. The defense attorney also asserted that he had examined other court records (public records) involving N.G., and that these records indicated that N.G. had a history of crimes that may have been alcohol-related. One of these records indicated that N.G. might have suffered an alcohol blackout.

With regard to the remainder of the defense request—*i.e.*, the request for disclosure of all of N.G.'s other medical and psychiatric records—the defense attorney merely asserted that "there [was] a reference to a mental health diagnosis" in the physicians' case notes described above. The defense attorney was apparently referring to the one physician's mention of "bipolar disorder".

Standifer's attorney acknowledged that the State presumably did not possess N.G.'s medical and psychiatric records. The defense attorney therefore asked the superior court to order N.G. to produce the names and addresses of every health care provider from whom she had ever sought medical treatment, psychiatric care or psychological counseling, or alcohol counseling or treatment.

In addition, the defense attorney asked the superior court to order N.G. to sign a blanket release, authorizing all of these health care providers to turn their files over to the superior court for the purpose of allowing the court to conduct an *in camera* inspection of these materials—with the understanding that these materials would later be disclosed to Standifer's defense team if the court concluded that the materials were relevant to "[N.G.'s] ability to accurately perceive or truthfully report [the] events" at issue in this case.

Standifer's attorney conceded that he was seeking the production of privileged records—that is, N.G. had an evidentiary privilege to refuse to produce these materials. However, the defense attorney asserted that even if the requested materials were protected by privilege, the superior court should still order N.G. to authorize the disclosure of the requested materials because (according to the defense attorney) N.G.'s privilege had to yield to the defendant's need for relevant evidence.

After considering Standifer's request, as well as the separate oppositions filed by the State and by N.G., the superior court granted Standifer's request without explanation or comment.

In essence, the superior court ordered the production of all of N.G.'s treatment records, albeit in a two-stage process. The initial portion of the court's order directed N.G. to disclose the names and addresses of all of her health care providers (during the previous two decades), and further directed N.G. to sign a release authorizing these health care providers to turn their records over to the superior court. In the second stage of the process, the court intended to order these health care providers to produce their files to the court, so that the court could inspect these files.

N.G. promptly sought reconsideration of the superior court's decision, but the superior court ultimately re-affirmed its earlier order. This time, the superior court offered a legal justification for its decision: the superior court declared that it was adopting the reasoning contained in a written decision issued earlier (May 13, 2011) by another superior court judge in another case—*State v. Kalmakoff*, File No. 3AN–09–14599 Cr.

The *Kalmakoff* case involved a similar court order—that is, an order directing the victim of an alleged crime to reveal the identity of all her health care providers, so that the court could then obtain all of the victim's psychotherapy records. In *Kalmakoff*, the superior court rejected the victim's argument that all of a person's psychotherapy records are privileged.

The superior court noted that, under Alaska Evidence Rule 504(b), the psycho-therapist-patient privilege protects only "confidential communications"—as that term is defined in Evidence Rule 504(a)(4)—"made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional conditions". The court reasoned that, because the privilege was limited to confidential communications made for these specific purposes, there might well be other information contained in a person's psychotherapy records that was *not* privileged—*i.e.*, information that did not disclose the content of confidential communications.

Based on this reasoning, the superior court in *Kalmakoff* concluded that the witness's psychotherapy records were likely to contain both privileged information and non-privileged information—and that the only way to separate the privileged information from the non-privileged information was for the court to conduct an *in camera* inspection of all of the psychotherapy records.

This, then, was the justification that the superior court gave in the present case for its order requiring the production of all of N.G.'s psychotherapy records.

N.G. now appeals the superior court's decision.

*An overview of the legal issues presented here*

At the outset, we must point out that two distinct legal issues are presented in this case, but the superior court's order addresses only one of them.

As we have explained, the superior court's stated rationale for ordering the production

of N.G.'s health providers' records was that these records probably contained both privileged and non-privileged information—because the psychotherapist-patient privilege protects only "confidential communications". Based on this interpretation of the scope of the privilege, the superior court concluded that it needed to examine all of N.G.'s psychotherapy records *in camera*—so that the court could identify the non-privileged information, determine if that non-privileged information was relevant to assessing N.G.'s credibility as a witness, and (if so) disclose that information to Standifer's defense team.

Thus, one of the issues presented in this appeal is whether the superior court was correct in construing the psychotherapist-patient privilege in this limited fashion, and correct in presuming that N.G.'s psychotherapy records likely contained a substantial amount of non-privileged information.

But under Alaska law, even if all of the information in N.G.'s treatment records were privileged, this would not necessarily resolve the question of whether that information should be disclosed to the defense. Several times, this Court and the Alaska Supreme Court have approved trial judges' decisions to conduct *in camera* examinations of confidential or privileged records for the purpose of determining whether some of the information contained in those records should be disclosed to a litigant.

Thus, there are really two main issues to be addressed in N.G.'s case. The first issue is whether the superior court was correct when it concluded that N.G.'s treatment records likely included *non*-privileged information—information that had to be separated from the privileged information contained in those records. But the second issue is whether, even if all of the information contained in N.G.'s treatment records were privileged, the superior court would still be justified in ordering disclosure of some or all of this information to the defense.

*The scope of the psychotherapist-patient privilege under Alaska law, and why we conclude that the superior court was wrong in supposing that significant portions of N.G.'s psychotherapy records would not be privileged*

Alaska Evidence Rule 504(b) declares that any person who has consulted a physician or a psychotherapist has a privilege to refuse to disclose (and to prevent other people from disclosing) "confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental[,] or emotional conditions, including alcohol or drug addiction".

■ The privilege for physician-patient communications does not apply in criminal proceedings; *see* Evidence Rule 504(d)(7). However, the privilege for psychotherapist-patient communications *does* apply in criminal proceedings. *Ibid.*

Moreover, Evidence Rule 504(a)(3) adopts an expansive definition of "psychotherapist". Under this rule, the term "psychotherapist" includes not only psychiatrists and psychologists, but also all licensed professional counselors, all licensed marital and family therapists, and "[any] person authorized to practice medicine ... while engaged in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addiction".

Given this broad definition of the health practitioners who qualify as "psychotherapists" for purposes of the privilege, it would appear that N.G.'s psychotherapist-patient privilege covers essentially all of the information that Standifer's defense team ultimately wishes to obtain—that is, all information relating to N.G.'s diagnosis and treatment for alcohol abuse or for mental illness, insofar as this information might be pertinent to her ability to "accurately perceive or truthfully report events".

But the superior court's order in this case is premised on the idea that, even though all of the health care providers who treated N.G. for alcohol abuse or mental illness might qualify as "psychotherapists" for purposes of the privilege, there is still a significant possibility that some of the information contained in these health care providers' records would not be covered by the psychotherapist-patient privilege.

The superior court noted that the privilege extends only to "confidential communica-

tions", as defined in Evidence Rule 504(a)(4). Because of this limitation, the superior court reasoned that the information in N.G.'s psychotherapy records would not be privileged unless that information described, or otherwise revealed, the content of "confidential communications".

The superior court did not further explain or specify the kinds of information that it believed would not be privileged. However, because of the court's emphasis on "confidential communications", it appears that the court was thinking of information that did not involve the disclosure of a patient's statements.

Thus, for instance, one might argue that a psychotherapist's observations of a patient's physical condition, or a psychotherapist's observations of a patient's emotional state or "affect", considered as a distinct factor in the diagnosis (apart from the content of what the patient actually said), would not be covered by the privilege. Similarly, one might argue that the privilege would not protect the psychotherapist's ultimate diagnosis of the patient, or the psychotherapist's treatment plan for the patient—even though the privilege might protect the patient's various statements that led the psychotherapist to *reach* that diagnosis, or to formulate that treatment plan.

This interpretation of Evidence Rule 504 is incorrect.

First, we note that the psychotherapist-patient privilege protects more than the statements that a patient makes to their psychotherapist. Evidence Rule 504(b) declares that the privilege applies to *all* confidential communications made for the purpose of diagnosis or treatment—regardless of whether those communications take place directly between the patient and the psychotherapist, or between the patient and other persons who are participating in the diagnosis or treatment under the direction of the psychotherapist (including members of the patient's family), or solely among the people participating in the diagnosis or treatment (*i.e.*, even when the patient is not a participant in the conversation).

See, *e.g.*, *State v. Miller*, 300 Or. 203, 709 P.2d 225, 238–240 (1985), where the Oregon Supreme Court held that the defendant's explanation to a secretary-receptionist as to why he needed to see a doctor was covered by the psychotherapist-patient privilege, since "[a] reasonable person in [the] defendant's position could have believed [that] he had to tell her his problem in order to get past her to talk to a doctor." (Assumedly, the receptionist's later communication of the defendant's words to the doctor was also covered by the privilege.)

See also *American National Watermattress Corp. v. Manville*, 642 P.2d 1330, 1333–35 (Alaska 1982), where the Alaska Supreme Court held that the attorney-client privilege covered statements made by a prospective tort plaintiff to an investigator employed by an attorney—even though the attorney had not yet agreed to take the plaintiff's case—because the purpose of having the plaintiff talk to the investigator was to enable the attorney to evaluate the plaintiff's case.

In general, see the Commentary to Evidence Rule 504(b), which explains that the scope of the communications protected by the psychotherapist-patient privilege (and the physician-patient privilege) is modeled after the broad scope of communications protected by Alaska's attorney-client privilege (which is described in the Commentary to Evidence Rule 503(b), third paragraph).

Second, even though Evidence Rule 504(b) ostensibly protects only "confidential communications", we interpret this phrase to include other information generated during the professional relationship (*e.g.*, test results), as well as the psychotherapist's perceptions, theories, and conclusions pertaining to diagnosis and treatment when these perceptions, theories, and conclusions are based on information imparted to the psychotherapist through confidential communications.

In many jurisdictions where the psychotherapist-patient privilege is codified by statute or rule, the privilege is defined so that it explicitly extends to these matters. See, for instance, California Evidence Code § 1012, which states that the term "confidential communication", for purposes of the psychotherapist-patient privilege, "includes a diagnosis

made and the advice given by the psychotherapist in the course of that relationship". But even in jurisdictions where the privilege is defined solely in terms of "confidential communications"—as it is in Alaska—the privilege is still generally construed in a broader manner. As *McCormick on Evidence* explains,

> Statutes conferring a physician-patient privilege vary extensively, though probably a majority follow the pioneer New York and California statutes in extending the privilege to "any information acquired in attending the patient." Understandably, these provisions have been held to protect not only information explicitly conveyed to the physician by the patient, but also data acquired by examination and testing. Other statutes appear facially to be more restrictive and to limit the privilege to communications by the patient. This appearance, however, may frequently be misleading, for statutes of this sort have been construed to provide a privilege fully as broad as that available elsewhere.

Kenneth S. Broun *et alia, McCormick on Evidence* (6th edition, 2006), § 100, Vol. 1, pp. 455–56 (footnotes omitted).

We conclude that Alaska's psychotherapist-patient privilege should be construed in the broader manner suggested by this passage from *McCormick*.

First, as we explained earlier, the Commentary to Alaska Evidence Rule 504 declares that the scope of the psychotherapist-patient privilege is meant to mirror the scope of the attorney-client privilege codified in Evidence Rule 503. Even though the attorney-client privilege is also defined solely in terms of "confidential communications", *see* Evidence Rule 503(b), Alaska cases clearly hold that the attorney-client privilege extends not only to confidential communications between the client and the attorney, but also to other information generated during the professional relationship.

For example, in *Houston v. State*, 602 P.2d 784, 790 (Alaska 1979), our supreme court held that, when the defendant's attorney employed a psychiatrist to evaluate the defendant's potential insanity defense, the defendant's statements to the psychiatrist *as well as* the psychiatrist's resulting opinion were all protected by the attorney-client privilege. Similarly, in *Oines v. State*, 803 P.2d 884, 886 (Alaska App.1990), this Court held that the attorney-client privilege protected the results of a blood test performed by a defense expert (*i.e.*, an expert hired by the defendant's attorney), and thus neither the attorney nor the expert could be required to disclose the blood test results.

By analogy, then, the psychotherapist-patient privilege likewise should cover not only the confidential communications themselves but also other types of information generated during the professional relationship as a result of the confidential communications—information such as test results and diagnostic perceptions, theories, and conclusions.

In his brief to this Court, Standifer argues against this broader reading of the privilege. Standifer relies on what this Court said about the psychotherapist-patient privilege in *Cooper v. District Court*, 133 P.3d 692, 716 (Alaska App.2006):

> [T]he psychotherapist-patient privilege does not cover all testimony that discloses that someone suffers from mental health or behavioral problems, or that describes those problems, or that describes other people's reactions to those problems. The privilege has a narrower scope: it applies only to testimony that reveals the substance of confidential communications made for the purpose of diagnosing or treating those problems.

But the testimony at issue in *Cooper*— testimony relating to Cooper's son's behavioral problems and the effect that this was having on the marriage—was not elicited from, or (with one exception) attributed to, any mental health professional involved in the treatment of Cooper's son. Rather, this information was obtained from other people who had knowledge of the son's behavioral difficulties and the Coopers' marital relationship.

(The one exception, which we noted in our opinion, 133 P.3d at 717, was a single statement attributed to a mental health professional regarding his assessment of the boy's case. We declared that this statement was

admissible, not because it was unprivileged, but because "no objection was made." · *Ibid.*)

In other words, our decision in *Cooper* is consistent with the interpretation of Evidence Rule 504 that we adopt now.

We also believe there is a second, more fundamental reason for construing the psychotherapist-patient privilege more broadly than the phrase "confidential communications" might suggest: The privilege would essentially be gutted if a psychotherapist could be ordered to testify about a person's diagnosis or treatment, over the person's objection, so long as the psychotherapist refrained from expressly describing or referring to the content of any confidential communications.

If we were to construe the privilege in the narrow fashion suggested by Standifer, and apparently adopted by the superior court, this would defeat the societal interests protected by the privilege. As our supreme court explained in *Allred v. State*, 554 P.2d 411 (Alaska 1976):

[C]ommunications to a psychotherapist in the course of therapy are inherently confidential. Patients often make statements in psychotherapy which they would not make to even the closest members of their families. Psychotherapy tends to explore the innermost recesses of the personality, the very portions of the self which the individual seeks to keep secret from the world at large. Revelation of such matters could have an irrevocably harmful effect upon the reputation and well being of the patient. [Citation omitted]

[In addition], inviolability of the confidence is essential to achievement of the psychotherapeutic goal. Without foreknowledge that confidentiality will attach, the patient will be extremely reluctant to reveal to his therapist the details of his past life and his introspective thoughts and feelings. Without the patient's confidence a psychiatrist's efforts are worthless.

*Allred,* 554 P.2d at 417.

■ We therefore hold that the psychotherapist-patient privilege codified in Alaska

Evidence Rule 504 protects not only "confidential communications" as defined in Rule 504(a)(4) but also other types of information generated during the professional relationship as a result of the confidential communications—information such as test results and diagnostic perceptions, theories, and conclusions.

Because we interpret the psychotherapist-patient privilege in this manner, it follows that the superior court was mistaken when it concluded that N.G.'s psychotherapy records likely contained significant amounts of non-privileged information, and that an *in camera* inspection of those records would be needed so that the court could cull this non-privileged information and disclose it to Standifer's defense team.

Standifer is seeking all information contained in these records pertaining to N.G.'s diagnosis and treatment for alcohol abuse and/or mental illness, insofar as this information might be pertinent to N.G.'s ability to accurately perceive or truthfully report events. Given our interpretation of the scope of the privilege, it appears likely that all of the information that Standifer is seeking is, indeed, privileged.

Standifer points out that the initial portion of the superior court's order does not require disclosure of any psychotherapy records; instead, the court has simply ordered N.G. to identify all of her health care providers. Standifer asserts that N.G. has no privilege to refuse to disclose the names and addresses of her health care providers.

In *Moudy v. Superior Court,* 964 P.2d 469, 471 (Alaska App.1998), this Court held that the attorney-client privilege does not normally protect the *fact* that a person has consulted an attorney—as distinct from the confidential communications between attorney and client concerning the client's need for legal services, and the attorney's ensuing advice to the client.[1]

As explained in *McCormick on Evidence,* § 100, many jurisdictions follow this same rule with regard to the physician-patient privilege and the psychotherapist-patient

---

1.  *See also* Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* (9th ed.2006), Vol. 2, pp. 501–38–501–39.

privilege—although there is some contrary authority.[2] And, as explained in footnote 6 of this section of *McCormick*, some state courts have drawn a distinction (for this purpose) between the physician-patient relationship and the psychotherapist-patient relationship—concluding that, in the context of psychotherapy, disclosure of a patient's identity would likely expose something about the nature of the patient's condition and treatment.[3]

Our supreme court appears to have endorsed this approach in *Falcon v. Alaska Public Offices Commission*, 570 P.2d 469 (Alaska 1977). That case arose when Falcon, a physician who was running for elected office, refused to disclose the names of his patients to the Public Offices Commission. In discussing the policy interests at stake, the supreme court observed that, at least in certain situations, the mere fact that an individual has visited a certain physician might have the effect of disclosing confidential or sensitive information. The supreme court explained:

> [When] an individual visits a physician who specializes in contraceptive matters or whose primary practice is known to be giving abortions[,] and the fact of a visit or rendering of services becomes public information, private and sensitive information has, in our view, been revealed. Even visits to a general practitioner may cause particular embarrassment or opprobrium where the patient is a married person who seeks treatment without the spouse's knowledge[,] or a minor who does so without parental intelligence. Similar situations would be presented where, because of a specialized practice, the disclosure of the patient's identity also reveals the nature of the treatment, and the particular type of

treatment is one which patients would normally seek to keep private. Some examples would include the patients of a psychiatrist, psychologist or of a physician who specialized in treating sexual problems or venereal disease.

*Falcon*, 570 P.2d at 479–480.

However, we need not resolve this issue in N.G.'s case—because it would be completely artificial to view this one aspect of the superior court's order in isolation. The superior court not only ordered N.G. to disclose the names and addresses of her psychotherapists, but the court also ordered N.G. to sign a release authorizing these psychotherapists to turn their records over to the court. The superior court made it clear that its ultimate intention was to identify all of N.G.'s psychotherapists, and then order them to produce their files for the court's *in camera* inspection—under the assumption that these psychotherapy records likely contained non-privileged information that should be disclosed to Standifer's defense team.

Thus, even if there might be some instances where a person would have no privilege under Evidence Rule 504 to withhold the identities of their psychotherapists, we conclude that N.G. did have a privilege to withhold this information in the present case.

> *Even though it appears that all, or essentially all, of N.G.'s psychotherapy records are privileged, did the superior court nevertheless have a justification for concluding that N.G.'s privilege might have to give way to Standifer's demand for production—and that, therefore, the court should conduct an in camera review of the psychotherapy records?*

As we noted toward the beginning of this opinion, the fact that all (or essentially all) of the information contained in N.G.'s psycho-

2. *See, e.g., Falco v. Institute of Living*, 254 Conn. 321, 757 A.2d 571, 576 (2000) (holding that the identity of the patient attacking the plaintiff was privileged under the psychiatrist-patient privilege statute); *Dorris v. Detroit Osteopathic Hospital Corp.*, 460 Mich. 26, 594 N.W.2d 455, 460 (1999) (holding that the identity of the patient was protected by the physician-patient privilege statute).

3. Footnote 6 of *McCormick* lists the following decisions: *Ex parte Abell*, 613 S.W.2d 255 (Tex. 1981) (holding that the privilege precluded the

disclosure of the names of a psychiatrist's patients); *Rudnick v. Superior Court of Kern County*, 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643 (1974) (holding that a patient's identity is privileged if the context of the disclosure will reveal the nature of the patient's illness); *Hetter v. Eighth Judicial District Court*, 110 Nev. 513, 874 P.2d 762 (1994) (holding that the names of a surgeon's patients may be protected if nature of the medical problem or the treatment would be revealed by disclosure of the name).

therapy records is privileged does not necessarily answer the question of whether the superior court had the authority to order production of these records and then examine the records *in camera* to determine if some of the information contained in these records should be disclosed to the defense.

Conceivably, even when information about a witness is protected by the psychotherapist-patient privilege, a court might be justified in ordering disclosure of that information to the defendant if the information was sufficiently important to the defendant's cross-examination of the witness. Standifer indeed argues that his rights of confrontation and compulsory process, as well as his right to due process of law, must take precedence over N.G.'s psychotherapist-patient privilege if the information contained in N.G.'s psychotherapy records is pertinent to his defense— and he urges us to uphold the superior court's order on that basis.

■ There are times when a witness's right to keep certain information confidential must yield to a criminal defendant's right to confront the witnesses against them. See, for example, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), where the United States Supreme Court held that the defendant's right of confrontation took precedence over a statute requiring that the records of juvenile delinquency proceedings be kept confidential.

Some evidentiary privileges, such as the government's privilege under Alaska Evidence Rule 509 to conceal the identity of its informants, are expressly defined so as to allow a court to engage in this weighing of interests. Other evidentiary privileges are treated in the same way, by court decision. See, for instance, *Salazar v. State*, 559 P.2d 66, 78–79 (Alaska 1976), holding that, under the facts, the marital communications privilege had to yield to the defendant's right of confrontation.

However, certain evidentiary privileges— such as the attorney-client privilege—are treated as absolute. That is, once the holder of the privilege establishes that the privilege protects the information being sought, the privilege will be honored no matter how strong the countervailing interests in disclosure might be.[4]

Currently, Alaska law does not provide a firm answer to the question of whether a person's psychotherapist-patient privilege is absolute or, instead, can be overridden by a litigant's competing interest in disclosure.

In *Gunnerud v. State*, 611 P.2d 69, 71–72 (Alaska 1980), the Alaska Supreme Court approved a trial judge's decision to conduct an *in camera* review of a psychiatric report concerning a government witness, to see if the report contained information that was relevant to assessing the witness's credibility. The trial judge in *Gunnerud* examined the psychiatric report, concluded that it had no relevance to the witness's credibility, and therefore refused to disclose the report to the defense. The supreme court upheld the trial judge's decision—but the implication of *Gunnerud* is that the trial judge would properly have disclosed the psychiatric report to the defense if the judge had concluded that the report *was* relevant to assessing the witness's credibility.

Seemingly, *Gunnerud* supports Standifer's position in this appeal—his argument that a defendant's interest in confronting a government witness can override the psychotherapist-patient privilege. But it is unclear whether the witness in *Gunnerud* had a privilege to assert.

The psychiatric report in *Gunnerud* was part of a pre-sentence report that was prepared in connection with an earlier criminal prosecution of the witness.[5] In other words, the psychiatric report was already in the hands of the court and the State—apparently because the witness consented to be examined by a psychiatrist in connection with the sentencing in that earlier case, or else because the witness waived her psychotherapist-patient privilege for the purpose of allowing the sentencing court to consider a pre-existing psychiatric report.

---

4. *See* Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges* (2nd edition, 2010), § 6.2.8, p. 578, n.506.

5. *Gunnerud*, 611 P.2d at 71.

In *Spencer v. State*, 642 P.2d 1371 (Alaska App.1982), the trial court conducted a similar *in camera* review of a witness's psychiatric records, but those records also were already in the possession of the State—because the witness had signed a release authorizing disclosure of those records to the prosecutor, apparently in contemplation of the later *in camera* review by the court.[6]

Thus, no Alaska case provides a direct answer to the question of whether a court may override a witness's assertion of the psychotherapist-patient privilege in a criminal case and order disclosure of privileged information, based on the court's assessment that the defendant's interest in disclosure is more important than the witness's interest in maintaining the confidentiality of the privileged information.

This issue has, however, arisen in other jurisdictions, and a majority of those courts have concluded that, if the defendant makes a sufficient preliminary showing, the defendant is entitled to have the trial court conduct an *in camera* inspection of a government witness's mental health records—and that the witness's psychotherapist-patient privilege can be overridden if the trial court concludes that portions of those records are sufficiently relevant to the defendant's guilt or innocence, or are sufficiently relevant to the witness's credibility.

*See State v. Storlazzi*, 191 Conn. 453, 464 A.2d 829, 832–33 (1983); *Bobo v. State*, 256 Ga. 357, 349 S.E.2d 690, 692 (1986) (plurality opinion); *State v. Peseti*, 101 Hawai'i 172, 65 P.3d 119, 128 (2003); *People v. Dace*, 114 Ill.App.3d 908, 70 Ill.Dec. 684, 449 N.E.2d 1031, 1035 (1983), *aff'd*, 104 Ill.2d 96, 83 Ill.Dec. 573, 470 N.E.2d 993 (1984); *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992, 1002 (1991); *People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 562 (1994); *State v. McBride*, 213 N.J.Super. 255, 517 A.2d 152, 160 (1986); *People v. Acklin*, 102 Misc.2d 596, 424 N.Y.S.2d 633, 636 (N.Y.Sup.Ct.1980); *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn.1992); *State v. Green*, 253 Wis.2d 356, 646 N.W.2d 298, 304–312 (2002); *Gale v. State*, 792 P.2d 570, 581–82 (Wyo.1990).

*But contra: People v. Hammon*, 15 Cal.4th 1117, 65 Cal.Rptr.2d 1, 7, 938 P.2d 986, 993 (1997); *People v. District Court*, 719 P.2d 722, 727 (Colo.1986); *State v. Famiglietti*, 817 So.2d 901, 906 (Fla.App.2002); *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866, 873 (1995); *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290, 1296–98 (1992).

*See also Jaffee v. Redmond*, 518 U.S. 1, 17–18, 116 S.Ct. 1923, 1932, 135 L.Ed.2d 337 (1996) (a civil case in which the Supreme Court held that, under federal law, a witness's psychotherapist-patient privilege is absolute—that the protection of the privilege is not contingent on "a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure". However, the Supreme Court did suggest that there might be generalized situations in which the privilege would not apply; *see* footnote 19, 518 U.S. at 18, 116 S.Ct. at 1932).

■ But even if this Court were to hold that a witness's psychotherapist-patient privilege could be overridden by a criminal defendant's constitutional interest in confronting the witness, we would not be able to affirm the superior court's order on this basis.

As we have explained, when the superior court ordered the *in camera* production of N.G.'s psychotherapy records, the court did so under the theory that those records likely contained a significant amount of *non*-privileged material (because of the court's overly narrow interpretation of what sort of information is protected by the psychotherapist-patient privilege). The superior court's announced purpose for conducting its *in camera* examination of N.G.'s psychotherapy records was to separate privileged information from non-privileged information—and then disclose any relevant *non*-privileged information to Standifer's defense team.

But as we explained in the preceding section of this opinion, there is little reason to think that N.G.'s psychotherapy records contain any significant amount of non-privileged information. Instead, one would expect that

---

6. *Spencer*, 642 P.2d at 1374.

all, or essentially all, of the information contained in those records is covered by the psychotherapist-patient privilege. Thus, the superior court's rationale for conducting an *in camera* examination of those records was mistaken.

The superior court never addressed the alternative question of whether the court might be legally justified in examining the psychotherapy records, and ultimately disclosing information contained in those records, even if that information *was* privileged. Thus, even if Alaska law allowed trial judges to balance a witness's psychotherapist-patient privilege against a defendant's interest in disclosure—*i.e.*, allowed a judge to conduct an *in camera* examination of undisputedly privileged materials and then, potentially, order disclosure of some or all of this privileged information to the defense—the fact remains that the superior court made no findings and no ruling on this issue in N.G.'s case.

The question, then, is whether this Court should remand this case to the superior court for consideration of this issue, or whether we should reverse the superior court's order outright. The answer to this question hinges on whether Standifer's offer of proof could conceivably justify an *in camera* review of N.G.'s psychotherapy records.

We recently addressed an analogous issue in *Booth v. State*, 251 P.3d 369 (Alaska App. 2011), a case that involved a defendant's request for disclosure of a police officer's personnel file. We held in *Booth* that the defendant was entitled to have the trial court conduct an *in camera* examination of the officer's personnel file if the defendant identified

> a type of information that would be relevant to the defendant's guilt or innocence (in light of the facts of the case, the State's theory of prosecution, and the defendant's theory of defense), and if this type of information is the kind of information that would be recorded in a police officer's personnel file[.]

*Booth*, 251 P.3d at 374. We further held in *Booth* that if, during this *in camera* examination, the judge discovered that the personnel file did indeed contain this information, then the judge should turn the information over to the defense. *Ibid.*

N.G.'s case differs from *Booth* because the files at issue in this case are not personnel files, but rather psychotherapy records. Arguably, even if the psychotherapist-patient privilege is not an absolute privilege, a person's psychotherapy records should still be entitled to greater protection than a public officer's employment records. *See Commonwealth v. Barroso*, 122 S.W.3d 554, 564 (Ky. 2003) (overruling an earlier, more lenient test, and holding that "*in camera* review of a witness's psychotherapy records is authorized only upon receipt of evidence sufficient to establish a reasonable belief that the records [actually] contain exculpatory evidence").

We need not decide whether the *Booth* test applies to defense requests for *in camera* inspection of a person's psychotherapy records, or whether a more protective test should apply, or whether psychotherapy records are absolutely privileged, because we conclude that Standifer's request for production in this case fails to satisfy even the *Booth* test.

Standifer requested disclosure of any portions of N.G.'s psychotherapy records that might contain evidence that N.G. lacked the "ability to accurately perceive or truthfully report [the] events" at issue in this case. In support of that request, Standifer pointed to portions of the record indicating that N.G. had a history of treatment for alcohol abuse and alcohol withdrawal, including one incident where she may have suffered an alcoholic blackout. Standifer additionally relied on a notation made by one of the physicians who examined N.G., in which the physician indicated that N.G. had "a history of bipolar disorder".

But even assuming the truth of these suggestions that N.G. has a history of alcoholism and a history of bipolar disorder, the question is whether, given the other facts of this case, there is reason to believe that these mental conditions significantly impaired N.G.'s ability to perceive or relate the events at issue here. As we noted in our order granting review in this case, the question is

whether Standifer's offer of proof provided an evidentiary basis for concluding that persons who have experienced an alcoholic blackout at some point in the past, or who have a history of bipolar disorder, are therefore more likely to hallucinate or fundamentally misperceive events, or are more likely to be unable to discern truth from fiction in their later recounting of events.

This is essentially the test that our supreme court endorsed in *Gunnerud v. State,* 611 P.2d 69 (Alaska 1980). As we explained earlier, *Gunnerud* involved a situation where the trial court was in possession of a psychiatric report dealing with a government witness (because this report was part of a presentence report that was prepared in an earlier case involving the witness). The question was whether the defendant was entitled to disclosure of this psychiatric report.

The trial judge examined the psychiatric report *in camera* and then declared that he was not going to disclose the report to the defendant "unless [the psychiatrist] can first advise [me] that the [patient's] history, and the examination, and [the] diagnosis [and] treatment, or ... any prognosis that he might have concerning this witness would be such as to bear upon her credibility."[7] In other words, the trial judge was unwilling to assume that the witness's credibility was in doubt simply because she had been diagnosed with, or treated for, mental illness. The supreme court upheld the judge's decision.

See also *Pickens v. State,* 675 P.2d 665 (Alaska App.1984), where this Court addressed the related issue of whether the trial court should have granted the defendant's request for a court order directing the alleged victim in a sexual assault case to submit to a psychological examination. Despite the fact that there was evidence indicating that the victim, V.C., suffered from emotional problems, and that she ingested both alcohol and cocaine before the offense, we concluded that the defendant's offer of proof was inadequate to support an order requiring the victim to submit to a psychological examination:

Pickens failed to make an adequate showing of a potential relationship between V.C.'s psychiatric condition and her veracity as a trial witness.... Pickens relied exclusively on an affidavit ... stating that V.C. threatened suicide two months prior to the sexual assault[,] and that she had previous emotional problems. The affidavit also noted that V.C. had used cocaine and was intoxicated at the time of the offense. On the basis of this affidavit, Pickens argues that psychiatric testimony would have aided the jury in assessing how alcohol and cocaine might have affected V.C.'s credibility. [But] Pickens does not indicate any specific reason to believe that V.C.'s prior emotional problems might have affected her veracity.

The general assertions that V.C. had previously suffered emotional problems of an unspecified nature and that she used cocaine and alcohol before the offense do not directly call into question her psychiatric condition or the relationship of her condition to her veracity as a witness. Defense counsel's speculation that a psychiatric evaluation of the victim might turn something up does not amount to a showing of necessity justifying a court-ordered evaluation. We think that, at the very least, it would have been incumbent upon Pickens to make a specific showing of good cause to believe, first, that V.C.'s ability to perceive events accurately or to relate those events truthfully was substantially impaired and, second, that this impairment was of such a nature that a psychological evaluation would be likely to confirm its existence or to provide material information as to its scope.

*Pickens,* 675 P.2d at 668–69.

Standifer's offer of proof in the present case suffers from the same defect. His request for production of N.G.'s psychotherapy records rests on his implicit assertion that a person who suffers from alcoholism and/or bipolar disorder is, as a consequence, significantly more likely to fundamentally misperceive events, or significantly less likely to be

7. *Gunnerud,* 611 P.2d at 72.

able to discern truth from fiction in their later recounting of events.

Conceivably, Standifer's assertion might be true—but we are unable to simply assume the truth of this assertion, and the record in front of us does not support this assertion. Accordingly, Standifer's offer of proof that N.G. suffers from alcoholism, and may suffer from bipolar disorder, was not sufficient to justify an *in camera* examination of her psychotherapy records.

We note that, as part of Standifer's offer of proof, Standifer relied on an earlier court record indicating that, about two and a half years before the incident in Standifer's case, N.G. was arrested for shoplifting in Fairbanks, and when she was interviewed by the police, she claimed that she was innocent and that she had "blacked out".

Recently, in *Milligan v. State*, 286 P.3d 1065 (Alaska App.2012), this Court held that evidence of a witness's prior alcoholic blackouts would be relevant if the proponent of this evidence showed that the witness was drinking at the time of the events being litigated, and that the witness's prior alcoholic blackouts were recent. *Id.* at 1069–1070.

But here, Standifer did not offer evidence that some third person observed N.G. experiencing a blackout, or that a medical care provider diagnosed N.G. as having experienced a blackout. Rather, Standifer relied on N.G.'s own exculpatory assertion to the police that she was not guilty of shoplifting because she was experiencing a "blackout". In addition, the incident in question occurred in January 2008, approximately two and a half years before the events in Standifer's case. For these reasons, we conclude that *Milligan* is distinguishable.

In sum, we conclude that Standifer's offer of proof was insufficient to justify an *in camera* examination of N.G.'s privileged psychotherapy records.

*Conclusion*

The superior court's order is REVERSED.

BOLGER, Judge, concurring.

BOLGER, Judge, concurring.

I agree with the reasonably broad construction of the psychotherapist-patient privilege discussed in the lead opinion. I write separately to note that this construction avoids some thorny constitutional questions.

For example, N.G. argues that an order compelling a crime victim to provide a list of all of her health care providers could violate the victim's right to privacy under Article I, § 22 of the Alaska Constitution.[1] In view of this fundamental right, it is arguable that any such order must be narrowly drawn so that disclosure is limited to information for which there is a demonstrable and compelling need.[2]

Moreover, as a crime victim, N.G. had the right to be "treated with dignity, respect, and fairness during all phases of the criminal … process" under Article I, § 24 of the Alaska Constitution. Construing similar constitutional language, another state court has required a criminal defendant, in order to justify *in camera* review of a crime victim's treatment records, to make a strict foundational showing that there is: (1) a reasonable certainty that exculpatory evidence exists, which would be favorable to the defense; and (2) a reasonable probability that, if the evidence were disclosed to the defense, the result of the proceeding would be different.[3]

We are not required to decide these constitutional questions because the disclosure order in this case unnecessarily infringes on the psychotherapist-patient privilege. But these circumstances serve as a reminder that a healthy construction of this privilege is necessary to avoid infringing privacy inter-

---

1. *See Falcon v. Alaska Pub. Offices Comm'n*, 570 P.2d 469, 479–80 (Alaska 1977) (annulling a statute that required doctors seeking public office to disclose the names of their patients).

2. *See Messerli v. State*, 626 P.2d 81, 86 (Alaska 1980) (holding that a campaign disclosure statute that affected the right to privacy would have to be justified by a "legitimate and compelling governmental interest").

3. *See State v. Blake*, 63 P.3d 56, 60 (Utah 2002).

ests protected by the constitution.[4]

**4.** *See State v. R.H.*, 683 P.2d 269, 280–81 (Alaska   App.1984).